UNITED STATES ex rel. KLEIN et ux. v. WILLIAMS, Immigration Com'r.

(Circuit Court, S. D. New York. August 10, 1911.)

ALIENS (§ 32*)—EXCLUSION—POWERS OF IMMIGRATION OFFICERS—REVIEW BY COURTS.

If there is no evidence that an alien immigrant is within one of the excluded classes, the immigration authorities have no power to exclude him, an order for his deportation is a nullity, and he is entitled to discharge from detention thereunder on a writ of habeas corpus.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

Petition by Isidor Klein and Karola Klein against William Williams, Commissioner of Immigration at the port of New York, for a writ of habeas corpus. Writ granted.

Benjamin Levison, for relators.

Henry A. Wise, U. S. Atty., and Robert Stephenson, Asst. U. S. Atty., for Com'r of Immigration.

HOLT, District Judge. This is a writ of habeas corpus to test the legality of the detention of Mr. and Mrs. Isidor Klein, who are held at Ellis Island under an order for their deportation. Mr. Klein is an engineer by profession, 36 years of age. His wife is an actress well known in Hungary. Both are educated persons of good address. Before coming to this country they lived at Budapest, Hungary, and became indebted to creditors in an amount of about $800 or $1,000, caused by an unsuccessful theatrical venture. When they concluded to come to this country, friends advised them that if they came openly and under their own names their creditors might arrest them, or interfere in some way with their coming, and that they had better come under an assumed name. Mrs. Klein's sister, Bertha Toth, gave her a passport which had been taken out in the sister's name. Mr. Klein had a friend, Daniel Rozsa, who also had a passport, which he gave to Mr. Klein. Mr. and Mrs. Klein thereupon came to this country under the respective names stated in the passports, and, when examined on landing, asserted at first that they were not married, and that the name of each was that stated in his or her passport. Circumstances indicated that they were living together, and, as they denied being married, the immigration authorities ordered that they be deported; Mr. Klein for bringing an alien woman into this country for an immoral purpose, and Mrs. Klein as coming here for such a purpose. Thereafter Mr. and Mrs. Klein admitted that they were not the persons mentioned in the passports, and that the names under which they had come were assumed, and furnished clear proof, by the production of their marriage certificate and by other evidence, that they were legally married. Thereupon a further hearing was had, and during the course of that hearing the commissioner of immigration received a letter from the consul general of Austria, inclosing the following cablegram, which had been received by the consul general:

"Austro-Hungarian Consulate-General:

"Neither in Budapest nor in Zitah is there any information reported against Isidor Klein and wife, who resided at No. 32 Eotvos Str. (Budapest). Isidor Klein was arrested by this police department for fraud and forgery on March 12, 1911.                                                              Police Department."

The evidence on that hearing showed that Mr. Klein had about $60 and his wife about $70 when they arrived in this country, and that all but about $39 of it had been spent in procuring counsel to defend themselves on the hearing and for other purposes. The board of inquiry recommended their deportation, on the ground that the money in their possession was insufficient to meet their requirements until such time as they might become self-supporting, and because, in view of the communication from the Austrian consul, the board was satisfied that the hurried departure of Mr. and Mrs. Klein from Budapest was due to some crime or misdemeanor involving moral turpitude. They were excluded, however, as persons liable to become a public charge.

Thereafter a further hearing was ordered, and upon such hearing it appeared that Mr. and Mrs. Klein had in their possession valuable jewelry and theatrical costumes and dresses, which they valued at several thousand dollars. An expert diamond dealer, David Zaiden, who had been for many years in business in New York, examined the diamonds and jewelry before the board and testified that it was worth $640, and there is nothing in the case tending to cast doubt upon his evidence. William Knoerr, who described himself as a contractor for the Hollis Press, at 312 East Twenty-Third street, tendered a written offer to employ Mr. Klein for a period of three months at $12 a week. Armin H. Heltai, who described himself as manager of the Hungarian Theatrical Company, also submitted a written agreement to employ Mrs. Klein as an actress in his theater and pay her $60 a month for a period of six months. There is nothing to impeach the character of the men making these offers, or the genuineness of the offers. The board thereupon again recommended the exclusion of the aliens in the following language:

"These aliens left Hungary in a surreptitious manner, under assumed names, carrying passports to which they were not entitled. The stories and explanation of same carry with them an inference and presumption that one or both had committed an act or acts which brought them into conflict with either the civil or criminal authorities of Hungary. Additional color is lent to this by reason of the cablegram, which is already of record, stating that one Isidor Klein, whom we believe is the alien before the board, was arrested and charged with forgery. The statement of this Klein is that he left Hungary solely to avoid creditors. It seems to us unusual that a man with available assets amounting in all, as he testifies, to the sum of $3,000, should leave Hungary in the manner stated to avoid the payment of debts, aggregating according to his own testimony but $800. If permitted to land, we believe there is a likelihood of them becoming involved in proceedings, either civil or criminal, that would consume all the assets they have at present in their possession. We do not take seriously the offers of employment made in behalf of these aliens, the board being of the belief that they are made solely for the purpose of effecting their landing. The aliens have impressed us with their undesirability, and, considering all the circumstances, we are unanimous in the opinion that their deportation should take place."

The first ground upon which they were ordered deported, that they were coming here under immoral relations, has been admittedly abandoned by the immigration authorities. They state that they are convinced that they are man and wife. The ground subsequently taken was simply that they were liable to become a public charge, because they had but a small amount of cash left. It appears, however, by uncontradicted evidence, that they have property in their possession worth more than $600; that they are people in the prime of life, with professions in which they can earn money; and that both have offers of immediate employment from specific persons at remunerative rates. In view of these facts, the board, in its final report, states in substance that it suspected that Mr. Klein was guilty of some crime or fraud before leaving Hungary, and that, if they are admitted, whatever property they have will be consumed in defending in this country suppositious criminal or civil proceedings based on the imaginary offense which they committed in Hungary. There is no evidence that they ever committed any crime or fraud before leaving Hungary. The suspicion that they did so is based on the cablegram received by the Austrian consul. In the first sentence of that cablegram the police department states that:

"Neither in Budapest nor in Zitah is there any information reported against Isidor Klein and wife, who resided at No. 32 Eotvos Str., Budapest."

It then adds:

"Isidor Klein was arrested by this police department for fraud and forgery on March 12, 1911."

The petitioners deny that Mr. Klein was ever arrested by the police department for fraud and forgery, and assert that the Isidor Klein mentioned in the second sentence is another person. Undoubtedly these aliens are the persons who resided at 32 Eotvos Str., and if the Isidor Klein who was arrested is the same person as this Isidor Klein, it seems incredible that the police department should have reported that there is not any information reported against him. Moreover, if the Isidor Klein who was arrested on March 12th was this alien, how does it happen that he embarked for this country in June, unless he was discharged or acquitted upon some proceeding? No proceedings have been instituted by the Austrian consul against him since the receipt of that cablegram, and, in my opinion, there is no evidence in this case that he ever did commit any crime or fraud in Hungary.

Nor is there any evidence that he and his wife are likely to become public charges. The evidence that they own property of sufficient value to prevent the probability of their becoming a public charge is clear, and the theory finally assumed, that their property is likely to be used up in defending future criminal or civil suits brought in this country by reason of their supposed offense in Hungary, seems to me strained, far-fetched, and almost fantastical. Undoubtedly, under the authorities, if there is any evidence in a case proving or tending to prove that an alien is within one of the excluded classes, the decision of the immigration authorities is conclusive, even if there is very weighty evidence to the contrary, and the courts have no jurisdiction

to interfere. But if there is no evidence that an alien is within any of the excluded classes the immigration authorities have no power to exclude him, and the order excluding him is a nullity.

In my opinion, there is no evidence in this case that either of these aliens is within any of the excluded classes, and I direct that an order be entered releasing them from detention.