DAVIES v. MANOLIS.

(Circuit Court of Appeals, Seventh Circuit. April 19, 1910.)

. No. 1,651.

1. ALIENS (§ 54*)—ENFORCEMENT OF IMMIGRATION LAWS—REVIEW OF DECISIONS OF EXECUTIVE OFFICERS.

The power of Congress is well settled either to exclude aliens altogether or to prescribe terms upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers whose decisions on questions of fact are conclusive; but it is equally well settled that their decisions on questions of law are not conclusive on the courts which have power to grant relief to an individual aggrieved by an erroneous decision of a legal question by a department officer. .

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]    ○

2. ALIENS (§ 54*)—ENFORCEMENT OF IMMIGRATION LAWS—QUESTIONS REVIEWABLE BY COURTS.

In proceedings under the immigration laws, the final determination of the statute applicable to the case and interpretation of the grant of power therein cannot rest with the executive officers under our system of government; but the ultimate decision of such questions must remain with the courts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

3. ALIENS (§ 54*)—DEPORTATION—LEGALITY OF ORDER OR WARRANT OF DEPORTATION—NECESSITY OF HEARING.

Where the warrant of arrest, under which proceedings for the deportation of an alien were instituted, conducted, and concluded, charged alone a violation of Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp.· St. Supp. 1909, p. 447), but the proof and findings of the inspector before whom the hearing was had showed that the accused arrived in this country in 1906, such proceedings do not authorize a warrant of deportation by the Department of Commerce and· Labor for violation of Act March 3, 1903, c. 1012, 32 Stat. 1213, then in force, without a hearing on such charge, and the accused taken into custody on a warrant so issued is entitled to discharge on a writ of habeas corpus. .

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Habeas corpus proceeding by Nicholas Manolis against Daniel D. Davies, Immigration Inspector in charge at Chicago. From an order discharging petitioner, respondent appeals. Affirmed.

This appeal is from a decree of the District Court, in habeas corpus proceedings, discharging the appellee, Nicholas Manolis, petitioner therein, from

the custody of the appellant, Immigration Inspector of the United States, under purported warrants and orders of deportation issued by the Department of Commerce and Labor. The matter was heard in the trial court, upon submission of the petition for a writ and the return to the writ, filed in behalf of the appellant, respondent therein, without introduction of other evidence.

The return filed by the appellant states that the petitioner "is held by respondent by virtue of the order of deportation" as follows:

"Department of Commerce and Labor,

"Bureau of Immigration and Naturalization.

"No. 52045/145. Washington, May 22, 1909.

"Immigrant Inspector in Charge, Immigration Service, Chicago, Illinois— Sir: The department has this day ordered the deportation of Nicholas Manolis, a Greek alien who was accorded a hearing by Inspector Seraphic at Des Moines, Iowa, as the evidence clearly showed him to be in this country in violation of the contract labor laws. The alien has been released upon his own parole into the custody of Chris Deckas and Gust Manolis (brother of the alien) who conduct a pool room and lunch room in the city of Des Moines. Inspector Seraphic is to present evidence to the United States attorney showing that the alien was imported by Seletos Bros. of Omaha, and therefore the deportation of Manolis is to be deferred during such time as the question of prosecution is being determined and for such time as his services as a witness may be required. You will therefore make arrangements to be informed by the U. S. attorney whether this alien need be detained as a witness in order that delivery at New York may be made as soon as possible. Whenever this alien is available for deportation you are instructed to cause him to be taken into custody and conveyed to New York, N. Y., for deportation, the expenses, both incidental and extraordinary, including the employment of an attendant at a nominal compensation of $1 and expenses, being authorized, payable from the appropriation, 'Expenses of Regulating Immigration.'

"Respectfully, Danl. J. Keefe, Commissioner General.
"Approved: Ormsby McHarg, Assistant Secretary."

It is further stated in the return "that the matters and things set forth in the petition" for the writ "respecting the facts upon which" deportation is ordered "have been decided by the Department of Commerce and Labor, and that there is no appeal to this" court therefrom. It furthermore refers to "a verified copy of the warrant for the arrest of petitioner and the evidence taken at the hearing" thereunder, held at Des Moines, Iowa, before Inspector A. A. Seraphic, together with his "recommendation and finding," as theretofore filed with the trial court and made a part of the return.

The warrant of arrest referred to reads as follows:

"United States of America,

"Department of Commerce and Labor,

"Washington.

"No. 52045/145.

"To A. A. Seraphic, Immigrant Inspector, Des Moines, Iowa, or to any Immigrant Inspector in the service of the United States: Whereas, from evidence submitted to me, it appears that Vedora Nikiforos (Nicholas) Manolis, alien, who landed at the port of New York, ex SS 'Francesca', on the 30th day of Sept. 1907, has been found in the United States in violation of the act of Congress approved February 20, 1907, to wit: That said alien is a member of one of the excluded classes in that he is a contract laborer and that he was induced or solicited to migrate by an offer or promise of employment or came in consequence of an agreement, express or implied, to perform labor herein. I, Wm. R. Wheeler, Acting Secretary of Commerce and Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to take into custody the said alien and convey him before yourself, to enable him to show cause why he should not be deported, in conformity with law. The expenses of execution and detention pending dis-

position of his case are hereby authorized, payable from the appropriation 'Expenses of Regulating Immigration.' Pending a decision in his case the alien may be released from custody upon furnishing a satisfactory bond in the sum of $500. For so doing, this shall be your sufficient warrant.

"Witness my hand and seal this 17th day of March, 1909.

"Wm. R. Wheeler, Acting Secretary of Commerce and Labor."

The finding and testimony referred to establish the fact that the appellee (petitioner) landed at New York in August, 1906, instead of September 30, 1907, was there examined and admitted, and (as stated in the report) "had been in the United States nearly thirty-three months" at the date of his arrest.

In the brief submitted by the United States attorney on this appeal the testimony certified with the return is summarized at showing: That the petitioner "was born in Greka, Greece, is now 18 years old, came to the United States in August, 1906; that his brother, Gust Constantinos Manolis, who was then working in the shine establishment of Seletos Bros. at Omaha, Neb., wrote to his father, inclosing a prepaid steamship ticket for petitioner from Greece to the United States; that he worked in the shine places for Seletos Bros. at $160 per year; that he had spoken to his employers and made an agreement with them to bring petitioner Manolis to the United States to work for them in their business places; that his employers had agreed to place petitioner at work in their business places, at $160 per year, and to pay for his clothing in addition; that petitioner reached the port of New York on the 25th or 26th day of August, 1906, went immediately to Omaha, Neb., and was met at the railroad depot by his brother and George Seletos; that George Seletos then took petitioner out and bought his wearing apparel, and placed him at work on the same day, telling petitioner that he would pay him exactly as he had prearranged with the brother, Gust Constantinos Manolis, when he wrote for petitioner to come; that petitioner worked for Seletos Bros. one year and seven months, and was paid the first year at the rate of $160 per year and his clothes, and the second year was paid at the rate of $200 per year." The brief further states:

"Gust Constantinos Manolis, the brother of petitioner, testified at the said hearing that he sent his brother, Nicholas, a prepaid steamship ticket for him to come to the United States from Greece and wrote to his father to send Nicholas to him; that his brother, Nicholas, came to this country in August, 1906; that Peter Seletos wrote on the back of his letter to the father of petitioner that, 'As soon as your son, Nicholas, arrives here, we will put him to work in our place and he will earn money.' 'Seletos Bros. promised me to put my brother to work when he came here and they agreed to pay him, Nicholas, $160 for the first year.' "

Beyond the foregoing, the testimony also shows that the petitioner had removed to Des Moines, Iowa, and owned, in partnership with another, "the best shine parlor" there; that he had invested in it the savings of himself and his brother out of their previous work at Omaha, and they "were slowly paying off the indebtedness on the place"; that he was "entirely self-supporting and financially independent" and intended to establish himself "as a bona fide resident of this country and this state."

The return further tenders a so-called "warrant of deportation," with a copy attached as a part thereof, reading as follows:

"United States of America,

"Department of Commerce and Labor,

"Washington.

"Copy.

"52045/145.

"To Joseph Murray, Acting Commissioner of Immigration, Ellis Island, N. Y. H.: Whereas, from proofs submitted to me, after due hearing before Immigrant Inspector A. A. Seraphic, held at Des Moines, Iowa, I have become satisfied that Nicholas Manolis, alias Nicolaos Manolis, alien, who landed at the port of New York, N. Y., ex SS 'Sannio,' on the 24th day of Aug. /06 is

in this country in violation of the acts of Congress approved February 20, 1907, to wit, Feb. 26, 1885, the subsequent immigration acts including those of March 3, 1903, and that the said alien is a member of the excluded classes in that he is a contract laborer; and whereas, the period of three years after landing has not elapsed: I, Ormsby McHarg, Acting Secretary of Commerce and Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to return the said alien to the country whence he came, at the expense of the steamship company importing him. You will be advised by the Chicago office when delivery will be made as a prosecution of the importers is being attempted. For so doing, this shall be your sufficient warrant.

"Witness my hand and seal this 22d day of May, 1909.

"Ormsby McHarg, Acting Secretary of Commerce and Labor."

Edwin W. Sims and John F. Voight, for appellant.

Herbert J. Freidman, for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). For reversal of the decree of the District Court discharging the appellee, Manolis, from custody under the order and warrant of arrest issued by the Department of Commerce and Labor, this appeal is prosecuted by the United States attorney on behalf of the appellant, Immigration Inspector, against whom the writ of habeas corpus was allowed. The contentions of error in the decree are substantially as follows: (1) That "the decision of the department * * * ordering the deportation of petitioner Manolis is final" and "not reviewable by the courts"; and (2) that the case and order are within the provisions and governed by the act of Congress approved March 3, 1903, entitled "An act to regulate the immigration of aliens into the United States" (Act March 3, 1903, c. 1012, 32 Stat. 1213–1222), and prior enactments in reference to the exclusion of contract laborers, although it is both conceded and unquestionable that the subsequent act, approved February 20, 1907 (Act Feb. 20, 1907, c. 1134, 34 Stat. 898–911 [U. S. Comp. St. Supp. 1909, p. 447]), on which the entire proceedings of the department were predicated, is not applicable to the case (as there found) of arrival in this country in August, 1906. See section 28 of the act.

1. The power of Congress is undoubted and well settled, either to exclude aliens altogether "or to prescribe terms upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention." Lem Moon Sing v. United States, 158 U. S. 538, 547, 15 Sup. Ct. 967, 39 L. Ed. 1082; Japanese Immigration Case, 189 U. S. 86, 98, 101, 23 Sup. Ct. 611, 47 L. Ed. 721; Pearson v. Williams, 202 U. S. 281, 284, 26 Sup. Ct. 608, 50 L. Ed. 1029. And this rule referred to, under which administrative powers are vested in the executive departments for enforcement of national policy thus prescribed, is alike settled in reference to other enactments administered by other departments respectively of the national government. In each instance the "questions of fact are for the consideration and judgment" of the department officials, and the act of Congress may make their decision final; and the general rule is equally well recog-

nized "that the decisions of the officers of departments upon questions of law do not conclude the courts, and they have power to grant relief to an individual aggrieved by an erroneous decision of a legal question by department officers." School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 108, 23 Sup. Ct. 33, 47 L. Ed. 90, and cases cited. Whether the limitations above mentioned may or may not be strictly applied to rulings of the Department of Commerce and Labor under either act of Congress referred to and authorities cited thereupon, we are not required to determine. We assume, therefore, without so deciding, that its alleged ruling recited in the so-called order of deportation addressed to the appellant—namely, that "the evidence clearly showed him [the appellee] to be in this country in violation of the contract labor laws," assumed by the officer to be applicable to the case—may not be reviewable as a conclusion, either of mixed law and fact, or of law upon undisputed circumstances, if the act of 1903 governs the case. Nevertheless, final determination of the statute applicable to the case and interpretation (to say the least) of the grant of power therein cannot rest with the executive officer under any authority cited; nor can such finality of executive decision have sanction under our system of government. Whatever may be the powers, even of judicial nature, vested in such officers for needful and summary enforcement of the governmental policy, we believe ultimate decision of the fundamental questions above stated must remain with the courts. The further question (under either of these acts referred to), whether the accused was granted a hearing in fact, upon the charge for which he is held in custody, is likewise open to judicial inquiry under the present writ, as settled in Chin Yow v. United States, 208 U. S. 8, 11, 28 Sup. Ct. 201, 52 L. Ed. 369.

2. Within the limitations above assumed we proceed to the inquiry: Do the warrant, proceedings, and order exhibited in the return to the writ afford justification for custody and deportation of the petitioner-appellee?

Review of the successive acts of Congress to regulate the immigration of aliens, inclusive of the act of 1885 and amendments thereof known as the contract labor laws, is not deemed needful, beyond references to certain sections of the act of 1903. Their policy and general import are well recognized and unquestionable.

On examination of the act of 1903, we are not satisfied that the case could be brought within its provisions, even were violation thereof charged in the warrant of arrest and proceedings instituted by the department, instead of charging violation of the act of 1907. Section 21 of the first-mentioned act is the only provision under which proceedings for deportation are authorized "within the period of three years after landing," and that relates only, in express terms, to "an alien found in the United States in violation of this act." Section 2 of the act expressly defines the "classes of aliens excluded from admission" thereunder, and no mention appears there or elsewhere in the act of "contract laborers," within the class to which either the testimony or purported ruling of the department may be attributable. Moreover, it appeared (as noted in Re Ellis (C. C.) 124 Fed. 637, 641,

642), not only that the previous omnibus act of 1891 (Act March 3, 1891, c. 551, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1294]) contained an enumeration which expressly included this class of "contract laborers," thus omitted from the revision of 1903, but that before the passage of the act of 1903 an enumeration of like effect was contained in the bill and was stricken out in the course of adoption.

Without resting our conclusion for affirmance, however, on such seeming insufficiency of the act cited by counsel for detention of appellee, we are of opinion that no support for the alleged department warrants or order is allowable under such act, in any view of its provisions. The warrant of arrest, under which the proceedings were instituted, conducted, and concluded, charges alone "violation of the act of Congress approved February 20, 1907," with specification which appears to be within the express terms thereof (vide section 2), as a "contract laborer." In the proceedings thereunder, before the inspector—which was the only hearing granted—the proof established, and the inspector so certified the fact to be, that the accused had arrived in this country in August, 1906, long prior to this enactment; and motion was made on behalf of the accused, at the conclusion of such hearing for his discharge accordingly. The inspector withheld ruling upon such motion, stating in his report:

"I refrain from making any recommendation and forward the record of the hearing to the department for a decision."

Whether the accused was thereupon released or detained appears only from the subsequent (so-called) "order of deportation," which recites that he "has been released upon his own parole into the custody of Chris Deckas and Gust Manolis (brother of the alien) who conduct a pool room and lunch room in the city of Des Moines," and directs "that he be taken into custody * * * for deportation." Under this conceded state of the record, with no hearing granted by the department in any form for violation (as now alleged) of the act of 1903, we believe no sanction appears for the order or warrant of deportation, even on the assumption, (a) that such act authorized deportation for the cause stated in the order, and (b) that the testimony reported by the inspector disclosed violation of the contract labor laws. Whatever were the subsequent proceedings or conclusions in the department, they were ex parte, and the final orders for rearrest and deportation were without hearing and unauthorized. In such case the petitioner-appellee was "entitled to a writ of habeas corpus," as he was arbitrarily "denied such hearing and such opportunity to prove his right to enter the country as the statute meant that he should have." Chin Yow v. United States, 208 U. S. 8, 11, 28 Sup. Ct. 201, 202 (52 L. Ed. 369).

The decree of the District Court, accordingly, is affirmed.