SINISCALCHI v. THOMAS, Immigration Inspector.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1912.)

No. 2,263.

1. ALIENS (§ 54*)—DEPORTATION—NATURE OF PROCEEDINGS.

Proceedings for the deportation of an alien under the immigration statutes are in no proper sense a trial for a crime or offense nor governed by the rules of such trials as to pleadings or evidence.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

2. ALIENS (§ 54*)—DEPORTATION—SUFFICIENCY OF EVIDENCE.

A certificate from a court of his native country showing that an alien was convicted of rape is sufficient to sustain a finding that he was convicted of an offense involving moral turpitude, which excludes him from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

entry into, or the right to remain in, the United States under Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 448), regardless of the length of the sentence imposed.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

3. ALIENS (§ 54*)—RIGHT OF DEPORTATION—THREE YEARS' LIMITATION—EFFECT OF PREVIOUS RESIDENCE.

Where an alien who has been a resident of the United States leaves it, even for a temporary purpose, and returns, the power of the Secretary of Commerce and Labor to deport him under Act Feb. 20, 1907, c. 1134, § 21, 34 Stat. 905 (U. S. Comp. St. Supp. 1909, p. 459), exists for three years after his last entry.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

4. ALIENS (§ 54*)—DEPORTATION—GROUNDS AND HEARING THEREON.

That a warrant of deportation of an alien was based in part on a fact not charged in the warrant of arrest is not a fatal objection, where it appears that the alien was given a fair hearing on the charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

5. ALIENS (§ 40*)—DEPORTATION—CONSTITUTIONALITY AND CONSTRUCTION OF STATUTE.

The provision of section 3 of Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), as amended by Act March 26, 1910, c. 128, § 2, 36 Stat. 264, that "any alien * * * who shall receive, share in or derive benefit from any part of the earnings of any prostitute * * * shall be deemed to be unlawfully within the United States and shall be deported," is within the powers of Congress over immigration, and is not unconstitutional as an infringement on the police power of the state; nor is there any limitation of the time within which an alien may be deported on such ground to three years after entry as under the original act.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig. § 40.*]

6. ALIENS (§ 53*)—DEPORTATION—LEGALITY OF PROCEEDINGS.

If it appears that an alien was in this country in violation of the immigration laws, an abuse of discretion on the part of the immigration authorities cannot be predicated of their discharge of official duty by deporting him merely because the government of the country of which he is a subject desired and requested his return thereto.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio.

Habeas corpus by Augusto Siniscalchi against Thomas Thomas, Immigration Inspector of the Department of Commerce and Labor of the United States. From an order dismissing the petition, petitioner appeals. Affirmed.

This is a proceeding in habeas corpus. The court below dismissed the petition, and appeal was taken. Appellant is an Italian, who, as found by the Secretary of Commerce and Labor, landed in this country at some unknown port after February 4, 1909. It is charged in the warrant of arrest, dated May 13, 1911, that he is here in violation of the immigration laws (approved February 20, 1907, as amended March 26, 1910), in this: that he is a member of the excluded classes, and has been convicted of or admits having committed a "felony or other crime or misdemeanor involving moral turpitude

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prior to his entry into the United States." In the warrant to deport, dated October 23, 1911, it appears that the acting Secretary of Commerce and Labor had become satisfied from evidence that Siniscalchi had been convicted of a "felony or other crime or misdemeanor involving moral turpitude prior to his entry into the United States; and that he is unlawfully within the United States, in that he had been found receiving, sharing in and deriving benefit from the earnings of a prostitute, and may be deported," and the Secretary directed his return to Italy. In his answer appellee admits that by virtue of the warrant of arrest he holds the petitioner in custody, and, further, that under the warrant of deportation it is his duty and intent to take petitioner to New York to be deported. The record contains among other things the following from a court of Italy:

"Record of Proceedings. Judicial Records, Penal Certificate, Court of Avellino. To the name of Siniscalchi Augusto, son of Sebastiano and Trione Rosa, born November 10, 1871, at Quindici, prov. of Avellino. At the request of the Commanding Officer of the Royal Carabineers at Avellino, 3-12-911 N. 209-909 Dic. 2.00 for official use.

"It is certified that in these Judicial Records it appears:

    \*      \*      \*      \*      \*      \*      \*

"II.    Court of Avellino, 7-10-89, 3 years for rape.

"III.    Court of Avellino modified on Appeal, 12-23-89, 4 months detention for rape.

    \*      \*      \*      \*      \*      \*      \*      \*      \*

"VI.    Assize Court of Avellino, 8-2-1910, 28 years and 3 months reclusion, a fine of lire 73 and 20, perpetual interdiction (loss of civil rights) for willful homicide, carrying concealed weapon and contravention.

    "Avellino, 3-13-1911. The Clerk of the Court, (Sig.) A. Sels. The Public Prosecutor, (Sig.) Illegible."

Testimony of witnesses was taken tending to sustain the charge contained in the warrant of deportation that Siniscalchi had been "found receiving, sharing in, and deriving benefit from the earnings of a prostitute"; that the prostitute is his wife; that she (born in Italy) practiced this degrading business both in Cincinnati in the summer of 1910, and in Richmond, Ind., in the summer of 1911, with her husband's consent; that during these periods the husband, although unemployed, had the means of living and of maintaining a household, and, when arrested, had on his person $550, a man's watch, a lady's watch set in diamonds, several pieces of jewelry, an unset diamond, etc. He fled when the officers sought to arrest him, and was not overtaken until one of them shot him. The fact of his marriage was shown by a certificate (dated March 7, 1899) obtained in a church in Boston. There are two children—one a girl of 12 years and the other a boy of 8 years of age. Testimony was offered to show that Siniscalchi was here at the date (August 2, 1910) of the conviction and sentence in Italy. Under advice of counsel he refused to testify.

C. O. Rose and H. M. Rulison, for appellant.

S. T. McPherson, for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] Although the proceedings involved in this case were begun and conducted under the immigration acts of Congress for the purpose of deporting Siniscalchi, yet they were objected to, and this appeal is pressed, upon the theory that the proceedings were so far criminal in their character as to require them to be considered in large measure according to the rules of criminal procedure. Such proceedings are in no proper sense a trial and sentence for a crime or offense. United States v. Hung Chang, 134 Fed. 19, 25, 67 C. C. A. 93 (C. C. A.

6th Cir.). They result merely in the ascertainment of whether the conditions exist under which particular aliens may remain within the country (Fong Yue Ting v. United States, 149 U. S. 698, 729, 730, 13 Sup. Ct. 1016, 37 L. Ed. 905), or under which they may be excluded or deported. The authorities are summed up by Judge Dodge in Re Jem Yuen (D. C.) 188 Fed. 350, 353:

"It is well settled that officers of the government, to whom the determination of questions of this kind is entrusted under statutes like those governing these proceedings, are not bound by the rules of criminal procedure, nor by rules of evidence applied in the courts. It is not enough for a review of their decision on habeas corpus that there was no sworn testimony, or no record of the testimony or of the decision. No formal complaint or pleadings are required. The alien's opportunity to be heard need not be upon any regular set occasion, nor according to the forms of judicial procedure. It may be such as will secure the prompt, vigorous action contemplated by Congress and appropriate to the nature of the case."

[2] It follows that despite the indefinite character of the warrant of arrest, especially in view of the certainty of the evidence and also of the first charge contained in the warrant of deportation, it was open to the Secretary of Commerce and Labor to consider the penal certificate (set out in the statement). True, it is insisted by counsel that the crime of rape appearing in that certificate cannot be made the basis of deportation. It is contended, in the first place, that, since the sentence was reduced from three years to four months, it amounts to nothing more than one of assault and battery; and, in the next place, that it is not shown that petitioner ever left this country after his first entrance, and he cannot therefore be charged with re-entry within three years of the date of his arrest. Counsel, however, fail to support their contention respecting modification of the sentence by any showing of the law of Italy on that subject; their reliance being placed upon the law of the state of Ohio. The record in terms states that the reduced period of detention was "for rape," and it cannot be that this does not signify moral turpitude within the meaning alike of the charge and the act of Congress.

[3] Next, is the three years' period applicable only to an alien's first entry into this country? We think not. We have just passed on this question in Frick, U. S. Imm. Inspector, v. Lewis, 195 Fed. 693, and need only refer to that decision. We have examined the record with a view of testing a claim made that there is nothing to show that petitioner ever returned to Italy after his entry some 12 years ago. It is, in substance, stated in the sixth paragraph of the penal certificate that a man bearing petitioner's name was convicted in the "Assize Court of Avellino, 8–2–910," of willful homicide and sentenced to 28 years and 3 months reclusion and loss of civil rights. It appears by the marriage certificate that Augusto Siniscalchi is the son of Sebastiano Siniscalchi and Rosa Trione. This agrees with the statement in the penal certificate; and petitioner's brother-in-law, Angelo Torti, who appeared as a witness, was shown a picture which he recognized as that of Augusto Siniscalchi. In a letter found in the record, dated at New York, September 5, 1911, from the Royal Consul General, it is stated that the sentence pronounced August 2, 1910, by the Court

of Assize of Avellino was inflicted on Siniscalchi for homicide committed in Quindici on the 14th of February, 1909.

While it is true that there is evidence showing that petitioner was in this country at the date of the conviction in Italy, yet this does not show that he was not in Italy at the date of the homicide; and it is in vain to contend, in a case like this, that the portion of the record just pointed out in no wise tends to sustain the finding of the Secretary that petitioner landed in this country at some unknown port after February 4, 1909.

[4] The objection urged against the charge that Siniscalchi was "found receiving, sharing in, and deriving benefit from the earnings of a prostitute" is for the most part grounded on the fact that this was not stated in the warrant of arrest, but only in the warrant of deportation. A similar defect appeared in the Japanese Immigrant Case, 189 U. S. 87, 101, 23 Sup. Ct. 611, 47 L. Ed. 721, but it was in effect treated as immaterial because appellant had notice of the purpose of the investigation in dispute. The executive officers engaged in the present case do not appear to have known of the facts on which this charge is based at the time the warrant of arrest was issued; and the only question of merit upon the objection at last is whether the petitioner was given a fair hearing upon the charge. Chin Yow v. United States, 208 U. S. 11, 13, 28 Sup. Ct. 201, 52 L. Ed. 369; United States v. Ju Toy, 198 U. S. 261, 25 Sup. Ct. 644, 49 L. Ed. 1040; Davies v. Manolis, 179 Fed. 823, 103 C. C. A. 310 (C. C. A., 7th Cir.). We are satisfied from the record that, while petitioner and his counsel were not always given notice that testimony on this subject was to be taken, still petitioner was represented by counsel in the taking of part of the testimony, and a copy of all the testimony taken in this behalf was furnished to counsel and opportunity given to examine witnesses or to put in witnesses themselves. Petitioner did not see fit to take advantage of the opportunity. Counsel believed that the testimony taken at Richmond was immaterial; and when on October 6, 1911, the record as then made up and all the accompanying papers were presented to counsel for inspection, it was stated that they did not wish to offer anything further in the case and were ready to have it submitted. We may add that in the court below Judge Hollister found:

"The writ of habeas corpus, now under consideration, was not issued until October 24th, the warrant of deportation having issued October 23d. In all of the time from October 6th to October 23d, no effort was made by the alien or his counsel to offer any evidence on the subject."

If we have the right to disturb this finding, we are not warranted in doing so. Wong Hueng v. Elliot, 179 Fed. 111, 102 C. C. A. 408 (C. C. A. 9th Cir.).

[5] The charge is founded on the portion of section 3 of the act, as amended March 26, 1910, from which the three years' limitation was removed by the amendment, and the manner of deportation prescribed by sections 20 and 21 substituted; and hence the question of re-entry involved under the first charge (passed on in the Frick-Lewis case) does not arise upon this branch of the present case. United States v. Prentis (D. C.) 182 Fed. 894, affirmed at April Session, 1911, Circuit

Court of Appeals, Seventh Circuit, not reported; Chomel v. United States, 192 Fed. 117 (C. C. A. 7th Cir.); United States v. Weis (D. C.) 181 Fed. 860; United States v. North German Lloyd S. S. Co. (C. C.) 185 Fed. 158; Sire v. Berkshire (D. C.) 185 Fed. 967; United States v. Williams (D. C.) 183 Fed. 904.

The point urged that the portion of the act upon which the charge now under consideration is based infringes upon the state's police power, and so is the exercise of a power not granted to the federal government, cannot be sustained. In Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, 16 Ann. Cas. 1066, relied on by petitioner's counsel, it was decided that the portion of the act of 1907, which made it a felony to harbor in any house for the purpose of prostitution any alien woman within three years after her arrival in this country, was unconstitutional. The amendment of March 26, 1910, made since the decision was rendered in Keller v. United States, contains a provision which changes the old offense of harboring prostitutes by forbidding the act when done in pursuance of an illegal importation; and this offense is highly penalized. It is provided later in the amended section that:

"Any alien * * * who shall receive, share in, or derive benefit from any part of the earnings of any prostitute * * * shall be deemed to be unlawfully within the United States and shall be deported. * * *"

The Keller Case arose under an indictment for committing the penalized offense of harboring alien prostitutes; while here we have to deal only with the question of deportation of an alien. In United States v. Williams, supra, Judge Holt stated a distinction between the Keller Case and the one then before him, which forcibly applies here. He said (183 Fed. 905):

"But the question whether a citizen in this country can be punished by federal law for establishing illicit relations with an alien woman after her arrival in this country is essentially different from the question whether such alien woman can be excluded by the federal law of the country."

See, also, United States v. Westman (D. C.) 182 Fed. 1017; United States v. Krsteff (D. C.) 185 Fed. 201, 205; United States v. Bitty, 208 U. S. 393, 28 Sup. Ct. 396, 52 L. Ed. 543.

[6] It is, in substance, alleged that this proceeding was instituted to relieve the Italian authorities from the necessity to extradite Siniscalchi and so is an abuse of discretion. It appears that the Italian consular office in New York started an investigation into the record of petitioner and requested the local police to have him traced with an idea of having him deported, preferring such course to an application for extradition. If the record discloses that the petitioner was in this country in violation of the immigration laws, an abuse of discretion on the part of the immigration authorities cannot be predicated of the discharge of official duty simply because the government of the country of which the alien is a subject desired and requested his return thereto. If it be assumed that the proceeding to deport was begun at the instance of the Italian consul, the record does not show that the immigration officials would not have sought to deport petitioner had the information in question come to them from any other source, and with-

out request of any representative of the Italian government. Moreover, it is not even suggested that the charge that petitioner was sharing in the earnings of a prostitute is based on any information derived from a representative of that government. The assignment of error concerning this feature of the case is without merit, and must be overruled.

We hold that the executive department obtained jurisdiction to pass upon the question of deportation of petitioner, and that there was no such irregularity in the proceedings as to warrant judicial intervention.

The judgment of the court below is affirmed.