### Ex parte YOUNG et al.

(District Court, W. D. Washington, N. D.   February 19, 1914.)

No. 2628.

1. ALIENS (§ 54*)—DEPORTATION—WARRANT—REQUISITES.

   Where, in proceedings to deport petitioners as aliens unlawfully within the United States, it appeared from their testimony on the deportation hearing that they knew with what they were charged, it was immaterial that the warrant of arrest was defective in not alleging the time and place of the alleged offense and the prostitute alleged to have been assisted and protected or promised protection from arrest, which constituted the offense.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

2. ALIENS (§ 46*)—DEPORTATION—GROUNDS—STATUTES—CONSTRUCTION.

   Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898, as amended by Act March 26, 1910, c. 128, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 501),

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

providing for the deportation, of any alien who in any way assists, protects, or promises to protect any prostitute from arrest, is not limited to assisting such persons to escape from arrest, as by furnishing money to escape to one threatened with arrest, etc., but contemplates only assistance furnished to such a person to enable her to continue the practice of prostitution.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. § 46.*]

3. ALIENS (§ 54*)—DEPORTATION—PROCEEDINGS—DEFENSES.

In proceedings to deport certain aliens for assisting, protecting, or promising to protect a prostitute from arrest, it was no defense that such aliens had been acquitted by juries on charges involving the same transaction.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Habeas corpus, on petition of Albert H. Young and another, to secure their discharge from arrest under deportation warrant. Petition denied, and rule discharged.

R. W. McClelland, H. A. P. Myers, and Walter L. Johnstone, all of Seattle, Wash., for petitioners.

Clay Allen, U. S. Atty., of Seattle, Wash., and G. P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash.

CUSHMAN, District Judge. The above petitioners, for discharge upon habeas corpus, have been ordered deported; the warrant of deportation reading:

"Whereas, from proofs submitted to me, after due hearing before Immigrant Inspector B. A. Hunter, held at Seattle, Wash., I have become satisfied that the aliens Albert H. Young and Kamasaburo Sugiura, alias B. K. Sugiura, who landed at some unknown port, have been found in the United States in violation of the act of Congress approved February 20, 1907, amended by the act approved March 26, 1910, to wit: That the said aliens are unlawfully within the United States in that they have been found assisting a prostitute and protecting, or promising to protect from arrest, a prostitute, and may be deported in accordance therewith: I, J. B. Densmore, Acting Secretary of Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to return the said aliens to Japan, the country from whence they came. * * *"

The warrant for their arrest recited:

"That the said aliens are unlawfully within the United States in that they have been found assisting, protecting, or promising to protect from arrest a prostitute or prostitutes."

The act under which they were ordered deported provides:

"That any alien * * * who in any way assists, protects, or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections twenty and twenty-one of this act." Section 3 of the Immigration Act of 1907, as amended March 26, 1910, 36 Stat. at L., p. 264.

Petitioners rely upon the following authorities: United States v. Sibray (C. C.) 178 Fed. 148, 149; 36 Cyc. p. 1118; People v. Chicago, 152 Ill. 546–552, 38 N. E. 746; U. S. v. Williams, 200 Fed. 541, 542, 118 C. C. A. 632; Id. (C. C.) 189 Fed. 917; Frick v. Lewis, 195 Fed. 696, 115 C. C. A. 493; U. S. v. Martin (D. C.) 193 Fed. 797, 798; Ex

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

parte Saraceno (C. C.) 182 Fed. 957; Ex parte Petterson (D. C.) 166 Fed. 539; Chin Yow v. U. S., 208 U. S. 11, 28 Sup. Ct. 201, 52 L. Ed. 369; Ex parte Long Lock (D. C.) 173 Fed. 208; Yamataya v. Fisher, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721.

Respondent relies upon the following authorities: In re Unlawful Detention of Moola Singh and Seventy-Two other Hindoo Aliens (Case No. 2532) 207 Fed. (D. C.) 780; Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1092; Du Bruler v. Gallo, 184 Fed. 566, at 569, 106 C. C. A. 546; Williams v. U. S., 186 Fed. 479, 108 C. C. A. 457; Sinis Calchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501; United States v. Williams (D. C.) 175 Fed. 274.

The grounds urged for discharge are that petitioners have not had a fair hearing and that there was no evidence whatever to support the charge in the warrant of arrest, or the finding in the warrant of deportation:

"That the said aliens (petitioners) are unlawfully within the United States, in that they have been found assisting, protecting, or promising to protect from arrest a prostitute or prostitutes."

[1] It is not necessary to determine, concerning the warrant of arrest, whether the charge, as set forth therein, would be sufficient to apprise petitioners with that of which they were accused, it not alleging the time, place, or naming the prostitute or prostitutes alleged to have been assisted, protected, or promised protection from arrest, as proceedings of this character are summary in their nature; and, if it appears from the return that petitioners were actually apprised of the nature of the accusation against them and had a fair hearing thereon, it is sufficient.

Petitioners were represented at the deportation hearing by one of their present counsel. They were tried and heard together. Petitioner Young, being first sworn and examined, was asked at the commencement of the examination and proceeding:

"Q. I believe that you have been tried in the United States court for certain offenses? A. Yes, I have been tried twice on the same offense.

"Q. What offense? A. Aiding and abetting in transporting a Japanese girl, Hana Saito, in the interstate commerce from Seattle to San Francisco, and I was tried in February, 1913, and acquitted, and I was reindicted by a grand jury, last grand jury, and tried for conspiring to violate the same Mann Act, and again acquitted for transporting Hana Saito. I have been acquitted by the jury on a second trial and rearrested by departmental warrant for practically the same thing."

The foregoing plainly shows that petitioners knew with what they were charged upon the deportation hearing.

The evidence shows that the woman, Hana Saito, had, prior to coming to Seattle, lived in a house of prostitution; that, after coming to Seattle, she was followed from San Francisco by a Japanese named Washio; and that the petitioners, at his solicitation, secured transportation for him and the woman to San Francisco and accompanied them by steamer to that city. When they arrived in San Francisco, the four went direct to the house of prostitution where Hana Saito had former-

ly been. There is some testimony that, before securing tickets to San Francisco, the petitioners were informed that this woman had, before coming to Seattle, been a prostitute living in this house.

There was no evidence that any warrant for the arrest of Hana Saito had ever been issued; but, on account of the conclusion reached, it is not necessary to determine whether the language of the statute, "promises to protect from arrest any prostitute," contemplates the actual existence of a warrant or proceeding for the arrest of a prostitute, from which she is promised protection, or whether it may not contemplate a promise of protection generally—either from the arrest to which those practicing prostitution are generally subject in municipalities, or the arrest to which alien prostitutes are subject under the laws of the United States.

[2] It is earnestly insisted by counsel for petitioners that the words "in any way assists, protects, or promises to protect from arrest" mean in any way assist from arrest, as by furnishing money to escape to one who is threatened with arrest. The argument is more ingenious than convincing. If such were the meaning, there are so many more apt words in which to express it that it seems unlikely that such could have been the intention.

On the other hand, if the words "any alien who in any way assists * * * a prostitute" are given their widest meaning, so as to include an alien who gives food, shelter, or medicine to a prostitute, which, it is contended, is the only other meaning of which they are capable, a conclusion is reached which is still more abhorrent to reason. A more satisfactory conclusion is that the intention was to declare unlawful the presence in this country of any alien who in any way assists a prostitute to practice prostitution, or towards its practice. Holy Trinity Church v. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226.

Even a prostitute may be something more than a prostitute. For example, she may be a milliner as well. The one who assisted her in the latter business would be assisting a milliner and could not be fairly condemned as assisting a prostitute, and one who assisted her in the practice of prostitution could not be excused on the plea of assisting a milliner.

Under the act so construed, it cannot be said but that there was some evidence to support the finding of the inspector and acting secretary.

[3] The fact that both of the petitioners had been acquitted in this court by juries on charges involving the same transaction in no way defeats the action taken, or the determination reached by the immigration authorities, for to justify a verdict of guilty by a jury it was necessary that the jury be convinced of petitioners' guilt beyond a reasonable doubt, while no such rule is imposed upon the immigration authorities. William Williams v. United States ex rel. Antonios Bougadis, 186 Fed. 479, 108 C. C. A. 457.

The letter of the Commissioner of Immigration to the Commissioner General of Immigration, recommending the deportation of petitioners and made a part of the return herein, states:

"They (that is the petitioners) admit that they committed an act which was neither more nor less than the kidnapping of a prostitute, in the conveyance

of whom from Tacoma, Washington, to San Francisco, California, they assisted. They deny that they knew that the woman was a prostitute. It may be that when they were 'first approached that they did not know the woman's character, but they were certainly given due notice before the high-handed proceedings had gone very far."

The same contention was made by the government in both the criminal trials mentioned. Petitioners at all times have insisted that the woman went to San Francisco willingly.

While respondent's position upon the warrant—that petitioners assisted a prostitute, which necessarily implies willingness and ' consent upon her part—is not strengthened by the commissioner's conclusion that they were kidnapping her, which would, as necessarily, be an involuntary proceeding upon her part, yet, as the commissioner's report is only a part of the record upon which the warrant issued, and, as pointed out, there is some evidence to support the finding and warrant, this inconsistency will not defeat the ultimate conclusion reached and the warrant of deportation based thereon, providing petitioners were accorded a fair hearing on the charge upon which they were ordered deported. Sinis Calchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501; United States v. Williams (D. C.) 175 Fed. 274.

Petition denied, and rule discharged.