### Ex parte ZAVALA.

(District Court, N. D. Texas, at Dallas. May 10, 1924.)

1. Aliens ⬉54—Proceedings to deport not trial for offense.

Proceedings under Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), to deport an alien are not in a proper sense a trial and sentence for a crime, and officers are not bound by rules of criminal procedure or evidence applied in courts.

2. Habeas corpus ⬉92(1)—Court may ascertain whether person ordered deported had hearing and whether facts constituted ground for exclusion.

On application by alien to be released from custody of immigration officer after order of deportation, court may inquire into and ascertain whether alien in fact had hearing, and whether facts deduced thereon constituted statutory ground for exclusion, but it appearing that officer ascertained facts in orderly manner with full opportunity of alien to

be heard by herself and attorney, and that Secretary of Labor, on facts certified, issued warrant of deportation, court may not disturb executive department in acting thereafter, under Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289jj).

Habeas Corpus. Application by Aurora Zavala to be released from custody of Guy Smith, Immigration Officer. Applicant remanded to custody.

Maury Hughes, of Dallas, Tex., for applicant.
A. J. Reinhart, Asst. U. S. Atty., of Dallas, Tex., for Guy Smith.

ATWELL, District Judge. Section 17 of 39 Stat. 887, Act February 5, 1917 (section 4289¼ii, Comp. St. 1918 [Compact Ed.], Comp. St. Ann. Supp. 1919), provides for boards of special inquiry at the various ports of arrival. The appointment of such boards shall be by the Commissioner of Immigration, or the inspector in charge at such port, and there shall be as many of them as may be necessary for the prompt determination of all cases of immigrants detained at such ports under the provisions of the law:

"All hearings before such boards shall be separate and apart from the public, but the immigrant may have one friend or relative present under such regulations as may be prescribed by the Secretary of Labor."

Such boards shall keep a complete and permanent record of their proceedings, and of all testimony produced before them; either the alien or any member of the board dissenting from the decision of the majority may appeal finally to the Secretary of Labor. This paragraph of the law also provides:

"In every case where an alien is excluded from admission into the United State. under any law or treaty now existing or hereafter made, the decision of a board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor."

Section 19 of the same act (section 4289¼jj) deals with the deportation after admission. It provides that:

"At any time within 5 years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

The same section provides:

"In every case where any person is ordered deported from the United States under the provisions of this act, or of any law or treaty, the decision of the Secretary of Labor shall be final."

Section 3 of the act (section 4289¼b) mentions the aliens who are excluded. Among them are "persons likely to become a public charge." The petitioner, if "likely to become a public charge" at the time of her entry, should have been refused admission, had the immigrant inspector at the port of entry so found. Had the inspector so found at that time, the petitioner would have been entitled to a hearing before the board provided for in section 17 mentioned above. She was not denied admission at the border. After having been admitted to the United States, she comes within the portion of section 19 already quoted.

298 F.—35

It does not appear that the Immigration Act gives the benefit of a hearing before a board of inquiry to an alien, alleged to be undesirable, who is found to be within the United States. Such an alien will be taken into custody by the Secretary of Labor, through one of the immigrant officers, and deported by him after that officer shall have made findings which are approved by the Secretary of Labor. The act does not inform us as to how the Secretary of Labor shall determine whether the alien is, in fact, such a person as should be deported.

In the present case it appears that the applicant was a teacher in the public schools of Mexico City; that she is about 16 years of age; that a man of her own nationality induced her to have carnal relations with him, promising to marry; that he told her he could not marry her in Mexico City, because he had committed a crime, and if he applied for a license the police would arrest him, but that if she would come with him to the United States he would marry her. She agreed, and when they came to the border, each represented that they were brother and sister, and that their names were Diaz. After having been in Texas some time, the girl discovered that Diaz was already married and he could not marry her; thereupon she returned to Mexico City. Her mother, being desirous of protecting her name and the name of the child, whose birth was imminent, induced her to return to Texas for the purpose of having Diaz marry her. When she reached the port of entry, she again represented that her name was Diaz; she paid the head tax and was admitted. After being in Dallas, Tex., some time, the immigrant officer caused her to come before him for a hearing as to why she should not be deported. At that hearing there were some affidavits, and her statement was taken. There were also some letters. The officer found that she was liable to become a public charge, inasmuch as she had a tiny baby and no property or money, and was at that time being cared for in a private family; and while the private family maintained that they would care for her, there was no legal obligation that they should do so. The result of this hearing was certified to the Secretary of Labor, who issued an order of deportation.

[1] It is contended that the immigrant officer did not conduct a regular trial in accordance with the federal Constitution. Proceedings of this sort are not in a proper sense a trial and sentence for a crime or an offense. United States v. Hung Chang, 134 Fed. 19, 67 C. C. A. 93. It is also well settled that officers of the government, to whom determination of questions of this kind are intrusted under the statutes, are not bound by the rules of criminal procedure, nor by the rules of evidence applied in the courts. In re Jem Yuen (D. C.) 188 Fed. 350; Siniscalchi v. Thomas, 195 Fed. 704, 115 C. C. A. 501; U. S. v. Martin (D. C.) 193 Fed. 796.

[2] This court may inquire into and ascertain whether the applicant, in fact, had a hearing, and whether the facts deduced thereon constituted a statutory ground for exclusion. Ex parte Gregory (D. C.) 210 Fed. 650; In re Suzanna (D. C.) 295 Fed. 713; Hughes v. U. S. (C. C. A.) 295 Fed. 800. It appearing that the officer, charged with this duty, ascertained that the applicant had entered the United States

under an alias, and that she had no money or property and no employment, and that these facts were regularly ascertained in an orderly manner, with full opportunity to be heard both by herself and by her attorney, and that these facts were certified to the Secretary of Labor, who thereupon issued a warrant of deportation, on the ground that she was a person liable to become a public charge at the time of her entry, this court may not disturb the executive department in acting thereafter.

These proceedings and this finding and the issuance of the order are clearly within the power of that executive officer, and the court finds that there has been no illegal proceeding, and no unfair act, and no deprivation of any right, and the applicant is remanded to the custody of the immigration officer. An order to that effect may be entered, save that 10 days are allowed to the applicant in which to prosecute her appeal, during which time she may be released on bond with proper sureties, to be approved by the clerk of this court, in the sum of $250.