### Ex parte KEIZO SHIBATA.

District Court, S. D. California, S. D. February 27, 1929.

No. 9440–H.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for petitioner.

S. W. McNabb, U. S. Atty., and W. R. Gallagher, Asst. U. S. Atty., both of Los Angeles, Cal., for respondent.

JAMES, District Judge. Petitioner is held by the immigration officers under authority of a warrant of the Secretary of Labor requiring that he be returned to Japan, his native country. By this proceeding petitioner seeks to be discharged from that custody on the ground that the warrant of deportation was illegally issued, stating his principal grounds as follows: (1) That the finding of the Secretary of Labor does not support the warrant of deportation. "because it is in the alternative, and therefore void"; (2) that the proceedings were unfair, in that a charge not included in the ones first lodged against the alien was preferred after the conclusion of the hearing, of which his counsel was not advised in time to be prepared to meet it; (3) that there was no evidence produced to support the warrant of deportation. The further ground that deportation action was barred by limitation of time was abandoned by the alien, in view of the holding in Lauria v. U. S. (C. C. A.) 271 F. 261.

The deportation warrant recites that the alien "has been convicted or admits the commission of a felony or other crime or misdemeanor involving moral turpitude, to wit, perjury, prior to entry into the United States." On September 8, 1919, petitioner arrived at the port of Victoria, B. C., on board ship from Japan. Upon his attempting to enter the United States, he was taken into custody by the United States immigration officers and given a hearing before a board of special inquiry at Seattle, Wash. Petitioner was there sworn, and through a Japanese interpreter testified regarding a former residence in the United States and the circumstances and important dates connected therewith. These matters were all material to the inquiry as to whether the alien had a right to enter the United States. He first testified that he had, at a prior time, lived for four years in the United States; that he had landed in San Francisco in February, 1914, and that he had a passport at that time; that the passport had been obtained on the representation that he was coming to the United States to buy breeding cattle for a dairy establishment in Japan, and that such was the fact; that he had, after being allowed to land, lost the money that he was to have used to buy the cattle with, and had found work as a family servant.

Upon the examining board suggesting to him that the records in the San Francisco office would furnish evidence of the facts represented by him, he retracted the statement, stating: "My former statement was not

true. I landed in February, 1907, at the port of San Francisco, from Hawaii. Do not remember the name of the steamer. It was a foreign steamer." He proceeded to detail that he came as a sailor and deserted the ship at San Francisco; that he had lived at Honolulu prior to that time for one year. After the taking of this testimony had been concluded, applicant requested permission to again appear before the board, and then changed his story and testified that he came to the United States in 1912, entering without inspection; that he came from Hawaii. The examining board reported findings recommending that the alien be deported as a person likely to become a public charge, his status being defined as that of a laborer. An appeal was taken and the findings of the board that the alien should be excluded were affirmed by the Labor Department.

Upon a showing, however, made by the alien that he had some farming interests in California, which he desired to give attention to, the order confirming the deportation decision was modified by a direction that the alien be admitted for a period of six months upon a bond in the sum of $1,000 that he would depart from the United States at the end of that period without expense to the government. The bond was furnished. The alien did not depart at the expiration of the time fixed, but applied for an extension of the temporary permit, which was allowed, the new date of departure being fixed at January 1, 1921. The sureties on the alien's bond consented to continue their responsibility for the alien's departure. The alien did not depart on January 1, 1921, and the Immigration Department on February 2 notified the bondsmen that the bond was subject to forfeiture. One of the sureties on the bond petitioned that a further extension of time be granted the alien, which was by the department denied, and action was directed to be taken to recover on the bond and to apprehend the alien. A warrant of arrest was issued dated the 4th of April, 1921, but petitioner was not apprehended until the year 1928. At the hearing then accorded him, the record of the proceedings as they were had at the time of the alien's conditional entry at Seattle was presented and considered by the inspector and the alien's counsel who was present. At that time the inspector advised the alien that in addition to the charge of his having been at the time he arrived at the United States port a person likely to become a public charge, the further accusation would be made that he had "admitted committing a crime involving moral turpitude,

to wit, perjury, before a Board of Special Inquiry at Seattle." The latter charge appears not at the time to have been used as a basis for a deportation recommendation.

However, the Labor Department, after considering the facts, directed that the case be reopened for the purpose of preferring the additional charge relating to the admission by the alien of perjury. A supplemental hearing was had on the 23d of August, 1928, before an immigration inspector, the alien and his counsel having received due notice thereof. The additional charge was there stated to the alien in the following form: "That you are an alien who was convicted of or admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude, to wit, perjury, before a board of special inquiry at Seattle, on October 3, 1919." The alien's counsel objected to the making of the additional charge. The inspector stated to the alien: "The evidence upon which the additional charge is based is contained in the record of the previous hearing to show cause and is part of that record. Do you wish to further examine that evidence?" To which the alien replied: "I do not." Inspector then advised the alien that the record and all of the evidence would be submitted to the Secretary of Labor, and asked: "What have you to say regarding this evidence?" Counsel for the alien replied: "No comment to make at this time." The alien was asked as to whether he had anything further to say or any further evidence to offer, and his counsel replied that he had not, but stated that he would file a brief in the case.

It will be noted that, at the final hearing before the inspector, no request was made for further time within which to produce evidence on behalf of the alien. Petitioner, therefore, cannot claim that the hearing was hastily concluded and without his having had full opportunity to produce evidence to rebut the charge.

In proceedings which bring into question the regularity of action taken by the department in control of immigration, the contentions are usually presented as though the alien person had the right to have his case reviewed by the courts on the facts, and measured by all of the close rules of pleading and evidence applicable to criminal causes. It may be well, therefore, to recall to mind the limited functions which the courts exercise in such matters.

The Supreme Court of the United States in an early case—the Japanese Immigrant Case, 189 U. S. 86, 23 S. Ct. 611, 47 L.

Ed. 721—gave expression to the rule and its reasons which limits the power of the federal courts to interfere with deportation orders regularly made by the Labor Department. On page 97 of the decision (23 S. Ct. 613) it is said:

"The constitutionality of the legislation in question, in its general aspects, is no longer open to discussion in this court. That Congress may exclude aliens of a particular race from the United States, prescribe the terms and conditions upon which certain classes of aliens may come to this country, establish regulations for sending out of the country such aliens as come here in violation of law, and commit the enforcement of such provisions, conditions and regulations exclusively to executive officers, without judicial intervention, are principles firmly established by the decisions of this court."

In a habeas corpus proceeding to test the sufficiency of an order deporting an alien, the effort of the court must be to sustain the action of the department to which is committed the duty of enforcing the acts of Congress respecting immigration. If the warrant itself is so defective as to state no legal ground for deportation, of course that matter will be considered on habeas corpus; likewise, where it appears that the hearing at which the alien's status was determined was so irregular as to prevent him from showing facts proper to be considered, or where it appears that there was no evidence upon which the conclusion made by the immigration officers could properly be based, a court may act and liberate the petitioner, or hold him for further proceedings. There can be no weighing of conflicting evidence by the court; there can be no insistence upon the rule of the best evidence in testing the facts. The Labor Department and its boards of inspection are not bound by strict requirements of court procedure, neither in the statement of the charge, nor in the mode of proving it. It was held by the Circuit Court of Appeals for the Sixth Circuit (Siniscalchi v. Thomas, 195 F. 701) that it is not important to the regularity of an order of deportation that the charge stated in the original warrant of arrest be the same as that stated in the warrant of deportation, the court saying that the only question to be considered under the head of that objection is whether the petitioner "was given a fair hearing upon the charge," citing Chin Yow v. U. S., 208 U. S. 11, 28 S. Ct. 201, 52 L. Ed. 369; U. S. v. Ju Toy, 198 U. S. 261, 25 S. Ct. 644, 49 L. Ed. 1040; Davies v. Manolis (C. C. A.) 179 F. 823.

The court in that decision made the following observation which is pertinent to the contentions made in this case: "We are satisfied from the record that, while petitioner and his counsel were not always given notice that testimony on this subject was to be taken, still petitioner was represented by counsel in the taking of part of the testimony, and a copy of all the testimony taken in this behalf was furnished to counsel and opportunity given to examine witnesses or to put in witnesses themselves. Petitioner did not see fit to take advantage of the opportunity. Counsel believed that the testimony taken at Richmond was immaterial; and when on October 6, 1911, the record as then made up and all the accompanying papers were presented to counsel for inspection, it was stated that they did not wish to offer anything further in the case and were ready to have it submitted."

In U. S. ex rel. Rosen v. Williams, 200 F. 538, the Circuit Court of Appeals in the Second Circuit, in considering the extent that a review on habeas corpus could go, after warrant of deportation, said that irregularities in the orders of arrest did not invalidate the warrant of deportation when the latter had been issued after a fair hearing. And this even though the warrant of deportation was based in part upon a charge not stated in the warrant of arrest. The court remarked that the sole question was as to whether the alien had had a fair hearing on the charge included in the warrant of deportation. In the case just referred to, the charge was based upon alleged admissions made at the inspection hearing before the immigration officers.

In the case of Howes v. Tozer (C. C. A.) 3 F.(2d) 849 (1st Cir.), the warrant of deportation contained the charge in the alternative form as is shown by the warrant here. No fault was found by the court with that mode of statement, but the court determined the case in favor of the petitioner there upon other grounds. The opinion contains a short statement of the court's view of that provision of the Immigration Act (8 USCA § 155) respecting the admission by the alien of the commission of a felony or his conviction of such crime, as follows: "We do not, however, think that evidence showing an admission of guilt is confined to an admission made by the alien at the hearing on the deportation warrant, but that an admission made by him at a prior time would be competent."

In the case of Kostenowczyk v. Nagle (C. C. A.) 18 F.(2d) 834 (9th Cir.) the warrant of deportation was in the language of the statute, and the charges were expressed in

the alternative form. One of the objections urged against the validity of the warrant was that the charges, being phrased in the alternative, were too indefinite to constitute a valid statement of a ground for deportation. The Circuit Court of Appeals denied the objection and said: "Appellant has not been injured, for a warrant of arrest for deportation of an alien need not have the formality and particularity of an indictment, but is sufficient if it gives defendant adequate information of the act that brings him within the excluded class and to enable him to offer testimony to refute the same at a hearing."

The effect of the court's holding in that case was further that, regardless of the number of causes expressed in a warrant of deportation, if any one of them is supported by any evidence heard by the immigration officers, the warrant is effective. The decisions cited and the rules stated are all opposed to the contentions made to sustain the writ.

And it may be further said: In plain words, when the alien was interrogated at Seattle, where he was attempting to enter the United States, he admitted having sworn falsely on his first examination respecting matters material to the question of his right to be admitted. He had not at that time been allowed an entry, but was attempting to get in. His mere presence on our soil, under detention by the immigration officers, gave him no status to support a claim that if he did admit having committed perjury, it was perjury after entry and not before. The evidence considered was that taken at all times in the presence of the alien.

The writ is discharged, and the petitioner is remanded to the custody of the immigration officers.