UNITED STATES ex rel. MANGO v. WEIS, Com'r of Immigration, et al.

(District Court, D. Maryland. September 24, 1910.)

1. ALIENS (§ 54*)—EXPULSION OF IMMIGRANTS — ALIEN PROSTITUTES — CON-
    STRUCTION OF STATUTE.
        Under Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U.
    S. Comp. St. Supp. 1909, p. 450), as amended by Act March 26, 1910, c.
    128, § 2, 36 Stat. 264, which provides that "any alien who shall be found
    an inmate or connected with the management of a house of prostitution
    or practicing prostitution after such alien shall have entered the United
    States * * * shall be deemed to be unlawfully within the United
    States and shall be deported in the manner provided by sections 20 and
    21 of this act," there is no limitation of the time within which an alien
    prostitute may be deported to three years from the time of her entry,
    as was the case under the section before amendment, it being one of the
    purposes of the amendment to abolish such limitation as to the class of
    aliens referred to therein; and the amended section, while not retrospec-
    tive, applies to any alien woman found so conducting herself as to come
    within its provisions since its enactment, regardless of her previous con-
    duct or of the time of her entry into the country.
        [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]
2. ALIENS (§ 40*)—DEPORTATION OF ALIEN PROSTITUTES—CONSTITUTIONALITY
    OF STATUTE.
        Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp.
    St. Supp. 1909, p. 450), as amended by Act March 26, 1910, c. 128, § 2,
    36 Stat. 264, which provides for the deportation of any alien woman who
    after her immigration into the United States shall be found practicing
    prostitution therein, regardless of the length of time which has elapsed
    since her entry, is within the constitutional power of Congress, and valid.
        [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig.
    § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Petition by Colomba Mango for writ of habeas corpus, directed to Louis T. Weis, Commissioner of Immigration, and Charles A. Hook, Warden of the Baltimore City Jail. Writ denied.

Vincent L. Palmisano, William Curran, and Thomas J. Mason, for plaintiff.

John Philip Hill and J. Craig McLanahan, for respondents.

ROSE, District Judge. Colomba Mango, alias Lina Marino, hereafter called the petitioner, is a native of the province of Salerno, kingdom of Italy. On July 30, 1910, the Acting Secretary of Commerce and Labor issued a warrant to the Commissioner of Immigration at Baltimore, directing that she be arrested on the charge that, being an alien, she had been found an inmate of a house of prostitution subsequent to her entry into the United States. The warrant directed the Commissioner to give her a hearing, to enable her to show cause why she should not be deported. Under this warrant she was taken into custody. On August 3, 1910, she was given a hearing. She was represented by counsel. At their request the hearing was adjourned until August 8th, when it was renewed and concluded. On August 12, 1910, the Acting Secretary of Commerce and Labor issued his warrant directing the return of the petitioner to the country whence she came. The warrant sets forth that the petitioner landed in New York on October 23, 1906, and is in this country in violation of the act of Congress approved February 20, 1907, as amended by the act approved March 26, 1910, in that she is an alien prostitute and has been found an inmate of a house of prostitution subsequent to her entry into the United States. The petitioner thereupon sued out this writ of habeas corpus.

There is no controversy as to the facts, and, if there were, as she has had a fair hearing, this court would have no jurisdiction to pass upon any disputes concerning them. They are recited because, being undisputed, they illustrate the evils which doubtless inspired the legislation of Congress upon the construction of which the decision of the present case turns.

In October, 1906, she was about 18 years of age. She says that an Italian, who was established in business as a druggist in New York City, made a short visit to Italy and to the village of which the petitioner is a native. The petitioner, with the consent of her mother, went to New York with him and served as a servant in his family. She landed in New York on October 23, 1906. She remained with her employer for something over two months, when she was seduced by another Italian whom she met in New York. She lived with him 15 days, when she left him; he having tried to put her in a house of prostitution. She went to Boston, she says, to get work; but on the day she arrived in Boston she met for the first time a certain Cipitello, who induced her to become a prostitute. She says she was an inmate of a house of prostitution in Boston for about six months. During this time she supported Cipitello by her earnings as a prostitute. She then became ill, and spent some time in a hospital as a public charge. While in the hospital, the man who had been living on the wages of

her shame was convicted of larceny and sent to jail. When he was released, she again joined him and became an inmate of a house of prostitution in Bridgeport. In his company she visited several other cities, in every case practicing prostitution and giving the money she made to Cipitello. When she found that he was sustaining like relations with three other girls, she left him. She went to Philadelphia, and became an inmate of a house of prostitution, and afterwards she came to Baltimore: Since coming to Baltimore she has been an inmate of three different houses of prostitution. She says that she was a pure girl when she came to this country, that she does not like the life she is living, and that if she could get honest work she would take it.

Her counsel contend that she cannot be legally deported, because the proceedings looking to her deportation were not instituted within three years after the date of her landing in this country. They claim that section 3 of the act of February 20, 1907, as amended by the act of March 26, 1910, under which the warrant is issued, expressly declares that an alien deported under its provisions shall be deported in the manner provided by sections 20 and 21 of the original act of 1907, and that the authority given by sections 20 and 21 to the Secretary of Commerce and Labor to order the deportation of an alien is expressly limited to aliens who have not been more than three years in this country. Section 20 provides for the deportation of an alien who has entered the United States in violation of law, and of such an alien as becomes a public charge from causes existing prior to his landing. It says that such alien shall, upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry within the United States. It further provides for the payment of the expenses of such deportation and for releasing the alien on bond pending the hearing of the case against him. Section 21 provides that whenever the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of the act, or that an alien is subject to deportation under the provisions of that act, or of any law of the United States, he shall cause such alien, within the period of three years after landing or entry therein, to be taken into custody and returned to the country whence he came, as provided by section 20. Section 21 further imposes the duty of returning such alien upon certain persons, and authorizes the Secretary of Commerce and Labor, when the mental or physical condition of the alien requires personal care and attendance, to furnish such care and attendance.

For the petitioner it is argued that, as sections 20 and 21 do not give any power to the Secretary of Commerce and Labor to issue a warrant to deport any alien who has been more than three years in the country, the warrant in this case is invalid on its face. The government answers that section 3 as amended merely requires that the deportation shall be made in the manner provided by sections 20 and 21. All that is meant, the government says, is that the same form of procedure shall be followed—that is, that there shall be a warrant issued by the Secretary of Commerce and Labor; that the alien shall be taken into

custody, and permitted to give bail pending the decision as to whether he shall or shall not be deported; that he shall be deported in the way mentioned in those sections; that the expenses of such deportation shall be paid as provided therein; that personal attendance shall be given to him when necessary, and so on. In the government's view, the question of whether the warrant of deportation must or must not be issued within any particular time after the entry of the alien in this country depends solely upon the wording of section 3 of the act of February 20, 1907, as amended by the act of March 26, 1910.

It will profit nothing to make a nice inquiry into what construction would ordinarily be put upon the word "manner," as used in connections similar to that in which it is found in the amendatory act of 1910. The real question is what it means in that act. Congress had two purposes in view in amending the original law of 1907. It was necessary to repeal those provisions of section 3 of the act of 1907 which had been held unconstitutional by the Supreme Court of the United States in the case of Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, and Congress wished more fully and effectively to use, for the prevention of prostitution by aliens, the powers which the federal government has to protect, to exclude, and to deport them.

In section 3 of the original Act of 1907 it is provided:

"Whoever shall keep, maintain, control, support or harbor in any house or other place for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl *within three years after she shall have entered the United States*, shall, in every such case, be deemed guilty of a felony, and on conviction thereof be imprisoned not more than five years and pay a fine of not more than five thousand dollars."

The section as amended by the act of 1910 declares that:

"Whoever shall keep, maintain, control, support, employ or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, in pursuance of such illegal importation, any alien, shall, in every such case be deemed guilty of a felony, and on conviction thereof be imprisoned not more than ten years and pay a fine of not more than five thousand dollars."

It will be noted that under the act as it originally stood it was no offense to harbor such alien for such purposes, provided the alien had been more than three years in the United States. Under the act as amended, it is immaterial how long the alien has been in the United States, provided the harboring is in pursuance of such illegal importation. With reference to the alien herself, the section as originally enacted provided that:

"Any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, *at any time within three years after she shall have entered the United States*, shall be deemed to be unlawfully within the United States and shall be deported *as provided* by sections 20 and 21 of this act."

The section as amended reads:

"Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute, or who is employed by, in or in connection with any house of prostitution or music or

dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported *in the manner* provided by sections 20 and 21 of this act."

Congress has here expressly stricken out the limitation as to three years. In order apparently to negative the very contention now made, it has changed the original language, which read, "shall be deported *as provided* by sections 20 and 21 of this act," to the words "shall be deported *in the manner* provided by sections 20 and 21 of this act." Moreover, the section as amended contains this additional provision, not found in the original act:

"Any alien who shall be convicted under any of the provisions of this section shall, at the expiration of his sentence, be taken into custody and returned to the country whence he came, or of which he is a subject or a citizen in the manner provided in sections 20 and 21 of this act."

As already shown, the act provides a maximum penalty which may be imposed upon an alien violating its provisions of ten years' imprisonment, and the section also says that any alien so convicted and sentenced under the act shall, after the expiration of his sentence, be deported in the manner provided by sections 20 and 21 of the act, using precisely the same language with reference to sections 20 and 21 in this connection as it does in connection with the alien practicing prostitution. It is quite clear Congress did not intend that an alien convicted of an especially grave offense under the act and sentenced to a long term of imprisonment should escape deportation because more than three years had elapsed since his entry into the country; and, as the same language is used with reference to the case of an alien found practicing prostitution, the argument is convincing that Congress did not intend the three-year limitation to apply to persons of the class to which the petitioner unfortunately belongs. A careful examination of the debates in Congress shows that it was distinctly stated by the member in charge of the bill which became the present law that one of its purposes was to strike out the three-year limitation. Congressional Record, vol. 45, pt. 1, p. 518.

Counsel for the petitioner assert that, even if the construction above stated be sound, still their client should not be deported, because the act should not be given a retrospective construction. He cites a large number of cases to prove that acts of Congress will not be given a retrospective application, if any other construction can be put upon their language. There is no doubt that this proposition of law is perfectly sound. But I do not find that the government is seeking in this case to give any retrospective application to this act. It will scarcely be contended that, because the alien petitioner had practiced prostitution in this country for more than three years before the passage of the act of 1910, she had thereby acquired by prescription a vested right to continue the practice. She is not now being deported since the passage of the act because she was an inmate of a house of prostitution before the passage of the act, but because she was an inmate of a house of prostitution practicing prostitution after its passage. If she had seen fit after the act was passed to have adopted another mode of

life, if any other mode of life was open to her in her unfortunate situation, another and different question would have been presented.

Counsel for the petitioner, however, assert that the act of 1910 was intended to apply only to those immigrants who have come into the country after its passage. To support this contention, they say that the language of the act is that any alien found practicing prostitution after such alien "shall have entered" the United States implies that the entry must have been subsequent to the passage of the act. Such, I am clear, was not the intention of Congress, and it would be carrying nice grammatical construction too far to put any such interpretation upon the words used. The old act contained the clause "within three years after she shall have entered the United States." Under that act it was repeatedly held by the courts that the alien prostitute could be deported, although she had come into the country before the passage of the act of 1907. For the purpose of getting rid of the three-year limitation with as little change in the language of the statute as possible, Congress simply struck out the words "within three years," leaving the words "after she shall have entered the United States" as they were in the old act, except that "such alien" is substituted for "she." As all persons born in the United States and subject to the jurisdiction thereof are citizens of the United States, no one who has not entered the United States at some time can be an alien, and therefore it is unnecessary to say "after she shall have entered the United States"; but the history of the act shows quite clearly how it is that those words are now found in the statute.

It being quite clear that Congress intended that an alien practicing prostitution shall be deported from the country, no matter how long the alien had been in the country, the only remaining question is whether Congress has the constitutional power so to direct. The plenary power of Congress to provide for the expulsion of an alien from the territory of the United States has been repeatedly affirmed by the Supreme Court. In Wong Wing v. United States, 163 U. S. 237, 16 Sup. Ct. 980, 41 L. Ed. 140, it was said: .

"We regard it as settled by our previous decisions that the United States can, as a matter of public policy, by congressional enactment forbid aliens or classes of aliens from coming within their borders, and expel aliens or classes of aliens from their territory, and can, in order to make effectual such decree of exclusion or expulsion, devolve the power and duty of identifying and arresting the persons included in such decree and causing their deportation upon executive or subordinate officials."

In Fong Yue Ting v. United States, 149 U. S. 730, 13 Sup. Ct. 1028, 37 L. Ed. 905, it was said with respect to a proceeding before a United States judge, as provided for in section 6 of the act of 1892 (Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320]), that Chinese proceedings are—

"in no proper sense a trial and sentence for a crime or offense. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an

alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, has determined that his continuing to reside here shall depend. He has not,. therefore, been deprived of life, liberty, or property without due process of law; and the provisions of the Constitution, securing the right of trial by jury, and prohibiting unreasonable searches and seizures, and cruel and unusual punishments, have no application."

The language of Justice Brewer in Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, that "it is unnecessary to determine how far Congress may go in legislating with respect to the conduct of an alien while residing here," has obvious reference to the extent of the power, if any, which Congress may have to provide for the punishment of aliens for doing acts with which, when done by citizens, Congress would have nothing to do.

By the act of March 26, 1910, Congress says, in effect, that in its judgment public policy requires that any alien found in the United States practicing prostitution shall be sent out of the country. Under the decisions of the Supreme Court of the United States, as I understand them, this Congress has a constitutional right to do. In so doing, it does not in any wise exercise a police power. It does not seek to punish any one for any offense any more than the provisions excluding Chinese are intended as a punishment for being born of the Mongolian race. One class of considerations has led Congress to believe that the presence of Chinese laborers in this country was contrary to the best interests of the nation; another and different class of considerations has convinced it that the continued residence in this country of alien prostitutes should be prevented.

I shall sign an order remanding the petitioner for deportation.