## UNITED STATES v. LAVOIE.

(District Court, W. D. Washington, W. D. November 4, 1910.)

ALIENS § 56*)—CRIMINAL LAW (§ 113*)—IMPORTATION FOR PROSTITUTION—ILLEGAL IMPORTATION—EVIDENCE.

Act Cong. Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), as amended by Act Cong. March 26, 1910, c. 128, 36 Stat. 264, prohibits the importation of aliens for prostitution, and declares that whoever shall hold, or attempt to hold, any alien for such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, employ, or harbor any such alien pursuant to such illegal importation, shall be guilty of a felony, and that jurisdiction shall be in any district to or into which the alien is brought "in pursuance of said importation" by the person or persons accused, or in any district in which a violation of any of the foregoing provisions shall occur. Accused imported a female alien, who was a prostitute, from British Columbia into the Northern district of California in March, 1908, visited her in San Francisco occasionally, where she continued to practice prostitution, but after the spring of 1908 their relations were interrupted until 1910, when defendant again met her in Seattle, in the Western district of Washington, and renewed illicit relations with her. Held, that such relations had in Washington were not "pursuant to the illegal importation"; there being no continuity of association, and hence defendant could not be convicted of keeping or maintaining in the Washington district, but was only guilty of importing, for which he was only subject to prosecution in the Northern district of California.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 56;* Criminal Law. Dec. Dig. § 113.*]

Philip Lavoie was indicted for maintaining an immoral female alien for purposes of prostitution, pursuant to the illegal importation, and at the conclusion of the government case demurred to the evidence. Sustained.

Elmer E. Todd, U. S. Atty., and Charles T. Hutson, Asst. U. S. Atty.

George P. Fishburne, for defendant.

DONWORTH, District Judge. The defendant is on trial, and, the government having rested, the defendant challenges the sufficiency of the evidence, and moves that the jury be instructed to find a verdict in defendant's favor on a number of grounds. Several of the points presented I do not find it necessary to pass upon.

Defendant is prosecuted under section 3, Act Feb. 20, 1907, c. 1134, 34 Stat. 899, as amended by Act March 26, 1910, c. 128, 36 Stat. 264, which prohibits the importation of aliens into the United States for the purpose of prostitution or for any other immoral purpose. The alleged importation was that of a certain woman from Victoria, B. C., to San Francisco, Cal., and, if the defendant were on trial for the act of importation, he could not be convicted constitutionally elsewhere than in the Northern district of California. The section of the act referred to, however, makes the further enactment that:

"Whoever shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation or whoever shall keep, maintain, con-

trol, support, employ or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, in pursuance of such illegal importation, any alien shall in every such case be deemed guilty of a felony and on conviction thereof be imprisoned not more than ten years and pay a fine of not more than five thousand dollars. Jurisdiction for the trial and punishment of the felonies hereinbefore set forth shall be in any district to or into which said alien is brought in pursuance of said importation by the person or persons accused or in any district in which a violation of any of the foregoing provisions of this section occur."

The indictment contains four counts. In each count the same illegal importation is alleged, followed by a statement of a violation of the above-quoted provisions or some of them at a place within the Western district of Washington, in pursuance of such illegal importation.

The evidence tends to show that the woman in question was born in Holland. How she came to the United States does not appear, but she had lived in this country some 14 years, and had become a prostitute before April, 1906, when she met the defendant at San Francisco and had illicit relations with him. In the early part of 1908 the woman was in Victoria, B. C., where she conducted a house of prostitution. The defendant, who was then living at Seattle, visited her there at intervals. In March, 1908, the woman having closed out her house, the defendant went to Victoria, and purchased two tickets by steamer from Victoria for San Francisco. On these tickets the defendant and the woman made the passage to San Francisco, the woman's name being entered on her ticket and on the passenger list as defendant's wife. On arriving at San Francisco the defendant, in his own name, entered at the customs house two trunks, one of which contained his own baggage and the other that of the woman. For the next two years or thereabouts the evidence is silent as to the doings of the defendant or the woman, except for the testimony given by the woman, who is a witness for the government. She states that for a short period after arriving at San Francisco the defendant visited her occasionally, and that she was then continuing the practice of prostitution. This with other evidence in the case, which it is not necessary to detail, is undoubtedly sufficient to show an illegal importation of the woman by the defendant. In 1910 the woman came to Seattle, in this district, and later the defendant also was found there. There is no evidence, not even that of the woman, that after the spring of 1908 the association of the parties was renewed prior to their meeting in Seattle during the present year, and no evidence that the woman was brought into this district by the defendant. There is evidence that the defendant harbored the woman in Seattle for the purpose of immoral relations with himself for several months in the spring and summer of 1910, and also that she practiced prostitution during that time. There is nothing to indicate that the defendant at any time made use of force or threats or restraint of any kind.

On this showing, can it be said that there is evidence sufficient to go to the jury tending to prove that the conduct of the defendant in relation to the woman in this district was in pursuance of the illegal importation? It is to be borne in mind that the government of the United States has no power to punish the acts complained of dis-

associated from the act of importation. As section 3 of the act read prior to the amendment of 1910, the words, "in pursuance of such illegal importation," did not appear in that part of the section making it criminal to keep, maintain, control, support, or harbor an alien for the purpose of prostitution or other immoral purpose. That clause as it then stood was held unconstitutional by the Supreme Court in the case of Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, on the ground that the federal government has no power under the Constitution to punish an act of this character merely because the woman concerned is an alien. For the purpose of providing a constitutional law covering in part the same ground, Congress by the amendment of 1910 inserted the additional words, evidently with the idea of finding constitutional support for the enactment in the power of Congress to regulate the migration or importation of aliens. As independent acts committed within any of the states, the Supreme Court has held that the federal government has no power over them, and that decision is as binding now as before the amendment of the statute. Assuming that the clause as amended is constitutional (as I believe it to be), the fact that the prohibited acts were done in pursuance of an illegal importation must not only be alleged, but must be proved. The statute would doubtless apply to a case where the bringing of the woman into a district other than that into which she is imported from the foreign country is a continuation of the act of importation, or is so connected with it in any way that it can be truthfully said that the subsequent acts are in pursuance of the importation. If there is evidence showing directly or by inference a continuous line of conduct connecting the acts of keeping, harboring, and the like with the illegal importation, either through the acts of the defendant or acts of others of which he has knowledge, the statutory charge would have evidence to support it. And there may be other circumstances in which the statute would apply. In this case, however, the positive evidence shows that, after the importation was completed, the defendant ceased control over or association with the woman in question, and then a period of two years elapsed during which apparently there was no association between the parties. The woman not only voluntarily, but spontaneously, came to this district, and the defendant resumed relations with her here.

In these facts I do not discover any evidence which would warrant the jury in finding that the conduct of the defendant in this district was in pursuance of the illegal importation which appears to have been terminated two years before. Cases will undoubtedly arise in which the fact that the acts of harboring and the like are subsequent to the illegal importation and are committed by the same person will be sufficient evidence that the subsequent acts were pursuant to that importation. But here the contrary appears. When the defendant ceased to have by himself or through others any association with or control over the woman directly or indirectly as the evidence shows that he did some time in 1908, his offense against the laws of the United States was completed. For that offense he should be indicted and punished in the Northern district of California, where it was com-

mitted. The Keller Case makes it clear that the criminality of the new association which took place between the parties in this state two years later is a subject exclusively within the realm of the police power of the state, so far at least as anything in the present statute is concerned.

The jury will therefore be instructed to find the defendant not guilty of the offense alleged to have been committed in this district. On his discharge from this indictment, he will be held to await the action of the proper authorities looking to his indictment and trial in the Northern district of California.