### UNITED STATES v. TSUJI SUEKICHI.

(Circuit Court of Appeals, Ninth Circuit.   October 7, 1912.)

No. 2,044.

**1.** HABEAS CORPUS (§ 23*)—EXCLUSION OF ALIENS—RIGHT TO WRIT.

Habeas corpus affords an efficient remedy against the action of immigration officers, where they exceed their power or authority, although their decisions on questions of fact is final and not reviewable.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 23.*]

**2.** ALIENS (§ 53*)—IMMIGRATION ACT—CONSTRUCTION.

The term "aliens," as used in Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1911, p. 499), applies only to alien immigrants, and not to alien residents.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*

For other definitions, see Words and Phrases, vol. 1, pp. 299–301; vol. 8, p. 7571.]

**3.** ALIENS (§ 40*)—EXCLUSION—CONSTRUCTION OF IMMIGRATION ACT.

The provision of Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899, as amended by Act March 26, 1910, c. 128, § 2, 36 Stat. 264 (U. S. Comp. St. Supp. 1911, p. 502), for the deportation of any alien who shall be convicted of importing any alien woman for purposes of prostitution, etc., and prohibiting his return, is not retroactive, and does not apply to an alien convicted of such offense under the statute before its amendment.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 100; Dec. Dig. § 40.*]

Appeal from the District Court of the United States for the Territory of Hawaii.

Habeas corpus by Tsuji Suekichi. From an order discharging petitioner, the United States appeals.   Affirmed.

This is a proceeding by writ of habeas corpus, on the petition of Tsuji Suekichi, the appellee, a subject of the Emperor of Japan. The petitioner migrated, and was admitted to the territory of Hawaii July 27, 1906. He took up his domicile in Honolulu, and so continued until September 26, 1910, when he departed for Japan on a short visit, with intention of returning to Honolulu and continuing his domicile there. Petitioner was lawfully married in Japan to Masa Tsuji, a Japanese woman.   Masa Tsuji arrived in Honolulu about August 28, 1906, and took up her domicile there also; the husband and wife residing together. The wife did not accompany Suekichi to Japan. Petitioner returned to Honolulu about June 17, 1911, but on his arrival he was refused landing by the United States immigration inspector. A Board of Special Inquiry was called, to determine the question of his right to land, and, after a hearing, it was ordered that he be rejected and sent back to Japan as a person convicted of a crime involving moral turpitude. Being held for deportation, Suekichi invokes the writ of habeas corpus for his discharge, having waived his right of appeal from the findings of the Board of Inquiry. It appears from a supplemental return of the inspector in charge that Suekichi was, on April 18, 1909, indicted in the District Court of the United States for the Territory and District of Hawaii, for the offense of importing and harboring for the purposes of prostitution an alien woman, to wit, the wife of Suekichi, that on the same day he pleaded guilty thereto and was sentenced to imprisonment for the term of three months, and has since duly served his sentence. This the petitioner admits. The District Court discharged the petitioner, and the United States appeals.

---

Robert W. Breckons, U. S. Atty., of Honolulu, Hawaii, Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty., both of San Francisco, Cal.

J. Lightfoot, of Honolulu, Hawaii, for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] It is first insisted by the government that the finding and judgment of the Board of Special Inquiry is final and conclusive, and that habeas corpus will not lie for the relief of the petitioner. While it is true that habeas corpus will not lie to correct the errors of tribunals intrusted with special matters of inquiry, it has always been held to afford an efficient remedy against the action of such tribunals, where they exceed their power or authority, or proceed upon an erroneous interpretation of the law. As to questions of fact, their findings are final, and preclude further inquiry. United States v. Jung Ah Lung, 124 U. S. 621, 8 Sup. Ct. 663, 31 L. Ed. 591; Nishimura Ekiu v. United States, 142 U. S. 651, 660, 12 Sup. Ct. 336, 35 L. Ed. 1146; Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 177, 48 L. Ed. 317. In the Ekiu Case the court makes use of this specific language:

"An alien immigrant, prevented from landing by any such officer claiming authority to do so under an act of Congress, and thereby restrained of his liberty, is doubtless entitled to a writ of habeas corpus to ascertain whether the restraint is lawful."

And in the Gonzales Case the court says:

"If she [Gonzales] was not an alien immigrant, within the intent and meaning of the act of Congress, * * * the commissioner had no power to detain or deport her; * * * and in the present case, as Gonzales did not come within the act of 1891, the commissioner had no jurisdiction to detain and deport her by deciding the mere question of law to the contrary."

[2] The next question presented is, the petitioner having once been regularly admitted to the territory of Hawaii, and having acquired a domicile there and lived there for several years, and having gone on a short visit to his native country, with an intention of returning to Hawaii, whether he can lawfully be excluded from the territory on application for admission on his return, although he committed an offense in the territory involving moral turpitude prior to his visit to his native country. The question involves a construction of Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1911, p. 499), as it respects the signification of the term "aliens" as employed therein, and also a construction of Act March 26, 1910, c. 128, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 501), as it may affect the present subject of inquiry.

The act of 1907, supra, is amendatory of Act March 3, 1903, c. 1012, 32 Stat. 1213, and this latter was likewise amendatory of Act March 3, 1891, c. 551, 26 Stat. 1084 (U. S. Comp. St. 1901, p. 1294), all treating of the same subject-matter. "The act of 1891," as is said by this court in United States v. Nakashima, 160 Fed. 842, 844,

87 C. C. A. 646, 648, Gilbert, Circuit Judge, speaking for the court, "had uniformly been held to apply solely to alien immigrants, and not to affect the rights of alien residents." Such being the interpretation of the term "aliens," as used in the act of 1891, the question presented in the Nakashima Case was whether a different signification should be given to the same term as employed in the amendatory act of 1903. After a careful review of the amendatory act, the court held that it was not the intendment of Congress to change the signification of the term, and that it retained the same meaning as had been formerly accorded it by interpretation of the courts. In that sense it pertained to alien immigrants, not alien residents.

A like question is presented here, which is whether the same term as used in the act of 1907 retains the same signification. From a careful reading of the two acts one with another, there appears to be no greater reason for giving to the term any different meaning than is accorded to it in the acts of 1891 and 1903. The Nakashima Case is therefore controlling, in that phase of the controversy.

[3] But it is further insisted that, inasmuch as the act of 1910 (section 3) denounces the act of any alien who shall be found an inmate or connected with the management of a house of prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of a prostitute, and declares that such alien shall be deemed to be unlawfully within the United States, and shall be deported in the manner provided by sections 20 and 21 of the act, and further declares that any alien who shall, after he has been debarred or deported in pursuance of the provisions of said section 3, attempt thereafter to return or to enter the United States, shall be deemed guilty of a misdemeanor, and that any alien who shall be convicted under any of the provisions of the section shall, at the expiration of his sentence, be taken into custody and returned to the country whence he came, in the manner provided by sections 20 and 21 of the act, Suekichi was lawfully rejected, because he had been convicted of the offense of importing and harboring an alien woman for the purposes of prostitution.

Said section 3 denounces the importation into the United States of any alien for the purpose of prostitution; but it does not denounce the harboring of any alien for like purpose, except it be in pursuance of such importation. The act of 1907 made it an offense to harbor for the purpose of prostitution any alien woman or girl; but this part of the act was declared unconstitutional, as inimical to the police powers of the state, in Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, 16 Ann. Cas. 1066, and the amendatory act (section 3) purged the old statute of this objection. The petitioner was convicted under the old act, and not under section 3 of the act of 1910, because conviction was had before the latter act became a law. Now the question is whether he should be denied admission, on his return to Hawaii, because of

the commission and conviction of the offense with which he was then charged. It will be noted that, while the present statute maintains the same penalty for importing an alien into the United States for immoral purposes, it has added to the ignominy of the offender. It deems him unlawfully within the United States, and subjects him to deportation; and this applies to an alien attempting to re-enter the United States after being absent temporarily. No such consequences followed under the old law.

It is perfectly manifest, from a careful reading of the amendatory act, that it is not intended to be retroactive. It prescribes that any alien who shall do the things therein denounced shall be deemed to be unlawfully within the United States, looking to the future. Then it provides that any alien who shall, after he has been debarred or deported in pursuance of the provisions of this section (section 3 of the act of 1910), attempt to return or to enter the United States, shall be deemed guilty of a misdemeanor, and any alien who shall be convicted under any of the provisions of this section shall at the expiration of his sentence be taken into custody and returned to the country whence he came, etc., all providing with reference to future conduct, and not in any way relating to what has been done in the past.

"Words in a statute ought not to have a retrospective operation, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied." United States v. Heth, 3 Cranch, 399, 2 L. Ed. 479; United States v. North German Lloyd S. S. Co. (C. C.) 185 Fed. 158, 162.

Applying the rule here, there can be no doubt that it was not the intendment of Congress to make section 3 of the act of 1910 retroactive in its operation. It therefore cannot affect the petitioner in the present controversy, and he was entitled to re-enter the territory, being an alien resident, not an alien immigrant, notwithstanding he had been convicted of the offense of importing into and harboring within the United States an alien woman for immoral purposes; the conviction having been had prior to the adoption of the amendatory act.

The judgment of the District Court will be affirmed; and it is so ordered.