## Ex parte SZUMRAK.

(District Court, E. D. Michigan, S. D. February 23, 1922.)

### No. 7766.

1. **Aliens ⬤⟿40—Statute making it an offense to keep or harbor alien pursuant to her importation for immoral purposes held constitutional and valid.**

Immigration Act Feb. 20, 1907, § 3, as amended by Act March 26, 1910, § 2, making it unlawful to import any alien for immoral purposes, and a felony to keep or harbor any alien woman for such purposes, "in pursuance of such illegal importation," *held* within the constitutional power of Congress over immigration, and valid.

2. **Aliens ⬤⟿54—Right to deport for keeping for immoral purposes alien woman imported for such purposes not limited to three years after his entry.**

Under Immigration Act Feb. 20, 1907, § 3 as amended by Act March 26, 1910, § 2, making it a felony to keep or harbor any alien woman for immoral purposes, pursuant to her illegal importation for such purposes, and further providing that "any alien who shall be convicted under any provision of this section shall at the expiration of his sentence" be deported to the country whence he came, or of which he is a subject or a citizen, the right of deportation is not limited to a time within three years after his entry.

3. **Aliens ⬤⟿53—"At," in a deportation statute, construed to mean not exact time sentence expires, but on or after.**

The word "at," as used in a statute providing that an alien, convicted of any one of certain offenses, "shall at the expiration of his sentence" be deported, does not mean at the exact time when his sentence expires, but is used in the sense of "on" or "after," and the deportation may be at any time after, but not before, completion of his sentence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, At.]

On petition of August Szumrak for writs of habeas corpus and certiorari. Denied.

Cohane, Rhodes, Garvett & Frankel, of Detroit, Mich., for petitioner.

Fred L. Eaton, Asst. U. S. Dist. Atty., of Detroit, Mich., for respondent.

TUTTLE, District Judge. This is a petition filed by the above-named petitioner, an alien praying for writs of habeas corpus and certiorari directed to P. L. Prentis, United States immigration inspector in charge at Detroit, in this district, whom the petitioner alleges to be unlawfully detaining him preparatory to deporting him as an undesirable alien. The writs sought having been granted, and the respondent having filed his return thereto, a hearing has been held thereon in open court, and the cause submitted upon briefs which have been carefully considered. The material facts are as follows:

Petitioner, who is an alien, being a citizen of Czecho-Slovakia, entered the United States January 4, 1911. On April 3, 1914, he pleaded guilty in this court to having theretofore and in June, 1913, kept, maintained, supported, and harbored in a house in said city of Detroit a certain alien woman for immoral purposes, in pursuance of the illegal importation by him of said alien woman, contrary to the provisions of section 3 of the Immigration Act then in force. Act Feb. 20, 1907, c. 1134, 34 Stat. 899, as amended by section 2, Act March 26, 1910, c. 128, 36 Stat. 264. Thereupon said alien was sentenced by this court to the Detroit House of Correction for a term of three months. While petitioner was serving this sentence, on April 22, 1914, a warrant was issued by the Department of Labor for his arrest and deportation, on the ground that he was unlawfully within the United States, in that he had been convicted of violating section 3 of the aforesaid Immigration Act. Petitioner then being confined in the Detroit House of Correction, pursuant to the sentence of this court just mentioned, his hearing on the charge alleged in said warrant was held at said House of Correction on April 27, 1914. At the conclusion of said hearing the immigration inspector in charge thereof made a written finding that said alien had entered the United States at the date aforesaid, and was unlawfully within the United States by reason of his conviction of a violation of section 3 of the Immigration Act, and his deportation was therein recommended. Petitioner was left in the custody of the warden of the House of Correction, "to await decision in his case by the Secretary of Labor."

It will be noted that the sentence imposed upon him by this court had not then expired. A warrant of deportation was issued May 6, 1914, but for some unexplained reason petitioner was released from prison at the expiration of his sentence, July 2, 1914, without any effort to detain or deport him. (I take judicial notice of the World War commencing August 2, 1914, and resulting European conditions, which made deportation difficult, if not impossible, for a very long period.) No further action by the government was taken until March 16, 1921, when another warrant for the arrest of petitioner was issued by the Department of Labor, charging that the alien in question, "who landed at an unknown port on or about the 15th of June, 1920, has been found in the United States in violation of the Immigra-

tion Act of February 5, 1917 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a–4289¼u], for the following, among other reasons: That he procured or attempted to procure or import a woman for an immoral purpose." Petitioner was thereupon taken into custody under this warrant, and hearings held thereon on June 14, June 18, and July 1, 1921, at the conclusion of which hearings the immigration inspector in charge made a written finding that said alien "entered the United States at an unknown port on or about June 15, 1920, and that he procured or attempted to procure or import a woman for an immoral purpose." His deportation was recommended, and another warrant of deportation issued, August 26, 1921, directing his deportation on the ground that he had been found in the United States "in violation of the Immigration Act of February 5, 1917, to wit, that he procured or attempted to procure or import a woman for an immoral purpose."

The return of the respondent states that petitioner entered the United States on or about the 4th day of January, 1911; that the latter is an undesirable alien, in that he procured or attempted to procure or import a woman for immoral purposes into the United States, has pleaded guilty to the said offense before this Court, and been sentenced therefor; and that "respondent is holding said petitioner for deportation on a warrant charging that he procured or attempted to procure or import a woman into the United States for immoral purposes, a copy of said warrant being attached hereto." Attached to said return are copies of the two warrants of deportation hereinbefore mentioned. Although the government places particular reliance on the proceedings and warrant of 1914, it does not waive the proceedings and warrant of 1921, and expressly claims the benefit of both proceedings, and the right to deport on either warrant.

While it is apparent from the foregoing that in the 1921 proceedings, following the issuance of the May 6, 1914, warrant of deportation, there has been manifest error and much confusion on the part of certain immigration officials, yet there is nothing about these subsequent proceedings which in any way affects the proceedings had in 1914. There is nothing about the warrant of 1921 and the proceedings in connection therewith which would invalidate the warrant and proceedings of 1914, if said warrant of 1914 is otherwise now valid and enforceable. It is here conceded by both parties that petitioner entered this country January 4, 1911, and that the statute applicable to his rights and liabilities is the Immigration Act of 1907, as amended by the Immigration Act of 1910, hereinbefore mentioned, and not the Immigration Act of 1917. In determining the present validity and force of the warrant of May 6, 1914, I shall ignore, and treat as surplusage, all proceedings taken under the 1921 warrant of arrest and deportation. I shall decide the case upon the construction, scope, and effect of the applicable sections (3, 20, and 21) of the 1907 act as amended by the 1910 act, and a consideration of the actions and proceedings taken thereunder through, and pursuant to, the 1914 warrant of arrest and deportation.

1. Section 3 of the act, before its amendment, provided as follows:

"That the importation into the United States of any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, is hereby forbidden; and whoever shall, directly or indirectly, import, or attempt to

import, into the United States, any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, or whoever shall hold or attempt to hold any alien woman or girl for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, or harbor in any house or other place, for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl, within three years after she shall have entered the United States, shall, in every such case, be deemed guilty of a felony, and on conviction thereof be imprisoned not more than five years and pay a fine of not more than five thousand dollars; and any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections twenty and twenty-one of this act."

After the 1910 amendment, this section read as follows:

"That the importation into the United States of any alien for the purpose of prostitution or for any other immoral purpose is hereby forbidden; and whoever shall, directly or indirectly, import, or attempt to import, into the United States, any alien for. the purpose of prostitution or for any other immoral purpose, or whoever shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, employ, or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, in pursuance of such illegal importation, any alien, shall, in every such case be deemed guilty of a felony, and on conviction thereof be imprisoned not more than ten years and pay a fine of not more than five thousand dollars. Jurisdiction for the trial and punishment of the felonies hereinbefore set forth shall be in any district to or into which said alien is brought in pursuance of said importation by the person or persons accused, or in any district in which a violation of any of the foregoing provisions of this section occur. Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; or who is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects, or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections twenty and twenty-one of this act. That any alien who shall, after he has been debarred or deported in pursuance of the provisions of this section, attempt thereafter to return to or to enter the United States shall be deemed guilty of a misdemeanor, and shall be imprisoned for not more than two years. Any alien who shall be convicted under any of the provisions of this section shall, at the expiration of his sentence, be taken into custody and returned to the country whence he came, or of which he is a subject or a citizen in the manner provided in sections twenty and twenty-one of this act. In all prosecutions under this section the testimony of a husband or wife shall be admissible and competent evidence against a wife or husband."

Sections 20 and 21 of the act of 1907, both before and after its amendment in 1910, provided as follows:

"Sec. 20. That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States. Such deportation, including one-half of the entire cost of removal to the port of deportation, shall be at the expense of the contractor, procurer, or other per-

son by whom the alien was unlawfully induced to enter the United States, or, if that cannot be done, then the cost of removal to the port of deportation shall be at the expense of the 'immigrant fund' provided for in section one of this act, and the deportation from such port shall be at the expense of the owner or owners of such vessel or transportation line by which such aliens respectively came: Provided, that pending the final disposal of the case of any alien so taken into custody he may be released under a bond in the penalty of not less than five hundred dollars with security approved by the Secretary of Commerce and Labor, conditioned that such alien shall be produced when required for a hearing or hearings in regard to the charge upon which he has been taken into custody, and for deportation if he shall be found to be unlawfully within the United States.

"Sec. 21. That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came, as provided by section twenty of this act and a failure or refusal on the part of the masters, agents, owners, or consignees of vessels to comply with the order of the Secretary of Commerce and Labor to take on board, guard safely, and return to the country whence he came any alien ordered to be deported under the provisions of this act shall be punished by the imposition of the penalties prescribed in section nineteen of this act: Provided, that when in the opinion of the Secretary of Commerce and Labor the mental or physical condition of such alien is such as to require personal care and attendance, he may employ a suitable person for that purpose, who shall accompany such alien to his or her final destination, and the expense incident to such service shall be defrayed in like manner."

[1] It is first urged that the conviction of petitioner hereinbefore referred to was void, because the provision of section 3 of the Immigration Act upon which such conviction was based is unconstitutional, and the case of Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, 16 Ann. Cas. 1066, is cited in support of this contention. The provision there held unconstitutional was section 3 of the Immigration Act of 1903 (Act March 3, 1903, c. 1012, 32 Stat. 1214), making it unlawful to harbor an alien woman for an immoral purpose. That provision was declared unconstitutional in the case just cited, on the ground that it did not relate to the regulation of immigration, but pertained merely to the subject of public morals, control over which was not within the power of Congress, but wholly within the police power of the several states. The 1903 statute was afterwards repealed by section 43 of the act of 1907, and the language of said 1907 act, as amended in 1910, was changed, in this particular respect, by inserting the words "in pursuance of such illegal importation." The addition of this language brings the subject-matter of this clause within the power of Congress to regulate immigration, and removes the ground for the constitutional objection to the previous statute. As, therefore, the petitioner was indicted, pleaded guilty, and was sentenced under the second count of an indictment charging him with having kept, maintained, supported, and harbored an alien woman "in pursuance of" her "illegal importation" by him, the contention based upon the alleged unconstitutionality of the act now under consideration must be overruled. United States v. Lavoie (D. C.) 182 Fed. 943; United States v. Krsteff (D. C.) 185 Fed. 201; Siniscalchi v. Thomas, 195

Fed. 701, 115 C. C. A. 501 (C. C. A. 6); United States v. Tsuji Sue-kichi, 199 Fed. 750, 118 C. C. A. 188 (C. C. A. 9).

2. Nor is there any merit in the argument that, because the first count in the indictment just mentioned, which charged the illegal importation referred to, was dismissed by the court, the element of illegal importation was thereby removed from the offense charged in the second count of such indictment. The two counts were entirely separate and distinct, and the effect of the second count was not dependent upon the disposition of the first count.

[2] 3. It is further earnestly urged on behalf of petitioner that his deportation is not legal, because it was not effected within the period of three years after his entry into the United States. The government, on the other hand, contends that there was and is no such limitation upon the time for the deportation of petitioner. The correctness of these contentions must depend upon the proper construction of certain provisions of section 3 of the 1907 Immigration Act, as amended by the 1910 act, hereinbefore quoted.

It will be noted that section 3 of the 1907 statute, before its amendment in 1910, provided that:

"Any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections twenty and twenty-one of this act."

That is, under section 3 of the 1907 act the only aliens who were made subject to deportation were alien women or girls who were found to be inmates of houses of prostitution or practicing prostitution in the United States "within three years" after entering the country. Any such alien, however, within such three years was "deemed to be unlawfully within the United States" and required to "be deported as provided by sections twenty and twenty-one of this act." Now, in order to remove this three-year period of limitation upon the time within which such aliens must avoid the prohibited misconduct, and in order also to avoid the three-year period fixed by sections 20 and 21 within which deportation must take place, Congress, in 1910, amended the clause of the section just quoted so as to provide that any such alien—

"who shall be found * * * practicing prostitution after such alien shall have entered the United States * * * shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections twenty and twenty-one of this act."

In other words, in order to remove the time limit, not only for the misconduct, but also for the resulting deportation, Congress merely omitted the words "within three years," and substituted for the words "as provided by sections twenty and twenty-one of this act" the words "in the manner provided by sections twenty and twenty-one of this act." It is clear that such omission and substitution removed all limitation from the time within which such alien might offend and be deported therefor. This language places no limitation upon the period of time within which any such alien may be decreed to be unlawfully within the United States and be deported. It merely directs that such alien

"shall be deported in the manner provided by sections twenty and twenty-one." This indicates the intention of Congress to make such aliens subject to deportation at any time after entry into the United States "in the manner" provided by said sections 20 and 21; that is, in accordance with the method and procedure prescribed therein. Bugajewitz v. Adams, 228 U. S. 585, 33 Sup. Ct. 607, 57 L. Ed. 978; United States v. Weis (D. C.) 181 Fed. 860; United States v. Williams (D. C.) 183 Fed. 904; Sire v. Berkshire (D. C.) 185 Fed. 967; Chomel v. United States, 192 Fed. 117, 112 C. C. A. 461 (C. C. A. 7), certiorari denied, 223 U. S. 723, 32 Sup. Ct. 524, 56 L. Ed. 630; Ex parte Garcia (D. C.) 205 Fed. 53. As was pointed out by the Supreme Court in the case first cited:

"The effect of striking out the three-year clause from section 3 is not changed by the reference to sections 20 and 21. The change in the phraseology of the reference indicates the narrowed purpose. The prostitute is to be deported, not 'as provided,' but 'in the manner provided,' in sections 20, 21. Those sections provide the means for securing deportation, and it still was proper to point to them for that."

Applying the same construction to another portion of the act, it will be further observed that although in section 3 of the 1907 statute no prohibition nor penalty was provided against receiving, sharing in, or deriving benefit from the earnings of a prostitute, yet in said section as amended in 1910 it is provided that:

"Any alien * * * who shall receive, share in, or derive benefit from any part of the earnings of any prostitute * * * shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections twenty and twenty-one of this act."

Under this language any such alien is now subject to deportation without any limitation upon the period of time within which such deportation must be made. It is merely provided that he "shall be deported in the manner provided by sections twenty and twenty-one of this act"; that is, his deportation must be effected under and according to the procedure, as distinguished from the time, provided by said sections 20 and 21. Siniscalchi v. Thomas, supra; Oceanic Steam Navigation Co. v. United States, 232 Fed. 591, 146 C. C. A. 549, Ann. Cas. 1917C, 248 (C. C. A. 2).

As has already been stated, petitioner became subject to deportation under section 3 upon his conviction on the charge of keeping, maintaining, supporting, and harboring an alien for an immoral purpose, in pursuance of her illegal importation by him. Under this section, before its amendment in 1910, petitioner could have been convicted on such charge only in the event that the alien woman involved had been so kept within three years after she had entered the United States. The guilt of any person on trial for violating said section in this respect is not now, and has not been at any time since the 1910 amendment, affected by the length of time that the alien so kept or harbored has remained in this country after entry thereto. It is not necessary, under the present statute, in order to convict a person of such a violation, to show that the keeping of the alien occurred within three years after the entry of the latter into the United States, although the crime of

which petitioner was convicted occurred within such period, in June, 1913. It will also be seen from the language of section 3 as it now stands that the only provision thereof rendering an alien so convicted subject to deportation is the following sentence:

"Any alien who shall be convicted under any of the provisions of this section shall, at the expiration of his sentence, be taken into custody and returned to the country whence he came, or of which he is a subject or a citizen in the manner provided in sections twenty and twenty-one of this act."

As the provision just quoted, like the other provisions of said section 3 previously discussed, does not contain any limitation of time within which the offense must be committed or within which the deportation must be effected, and merely prescribes that any alien so convicted shall be returned "in the manner provided" in sections 20 and 21, this sentence must, for the same reasons, be construed like the other provisions of section 3. An alien, like the petitioner, convicted under any provision of said section, is subject to deportation without any limitation of time, but subject to the method and procedure prescribed in sections 20 and 21; that is, "in the manner" provided in those sections. United States v. Weis, supra; Chomel v. United States, supra; United States v. Czeslicki (D. C.) 209 Fed. 496.

[3] 4. Finally, it is contended that, as petitioner was not taken into custody for deportation until seven years after the expiration of his sentence, he is not being held for deportation "at the expiration of his sentence," as required by section 3 of the statute involved, within the meaning of the language just quoted, and that therefore it is now too late for such deportation.

This contention must be based upon the argument that the word "at," in the phrase just quoted, refers to the exact time when the sentence in question expired. With this contention, and with the argument upon which it must be so based, I cannot agree. It is well settled that this word does not always imply such precision. For example, language in a conveyance of deed or will providing conditions for the disposition of property in a certain manner "at the death of" certain persons is not intended to, and does not, by the use of the word "at," require the performance of such conditions at the exact moment of such death, but said word is used in such cases in the sense of "upon" or "after." Numerous instances might be pointed out illustrating the varying shades of meaning which are properly indicated by the word "at." The rule is stated in 5 Corpus Juris, on page 1422, supported by numerous authorities, as follows:

"It is a word of great relativity and elasticity of meaning, and is somewhat indefinite, shaping itself easily to varied contexts and circumstances, and taking its color from the circumstances and situation under which it is necessary to apply it to surrounding objects. * * * It has been said that the connection furnishes the best definition."

It seems apparent that the use of this pharse "at the expiration of his sentence," means only that any sentence imposed after the conviction referred to in this section of the statute must be fully served before deportation of the offending alien, and that the term of such sentence cannot be interrupted or disturbed by such deportation.

For the reasons stated, it is my opinion that the petitioner is now subject to deportation. His petition will be denied, and an order to that effect entered.