**NAGLE, Commissioner of Immigration, v. EIZAGUIRRE. ***

No. 6087.

Circuit Court of Appeals, Ninth Circuit.

June 20, 1930.

Geo. J. Hatfield, U. S. Atty., and Hubert Wyckoff, Jr., Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

Russell P. Tyler, of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

This is an appeal by the Commissioner of Immigration from an order allowing a writ of habeas corpus and discharging the petitioner from custody. Originally, the appellee was granted a hearing on the charge that he was an alien employed by, in or in connection with, a house of prostitution. After a number of hearings were had, extending over a period of about a year, there was added the further charge that he assisted a prostitute.

At the time of his arrest, the appellee was discovered by immigrant inspectors in a

*Rehearing denied August 26, 1930.

house of prostitution at Marysville, Cal. At that time the proprietress of the place made a statement to the effect that the appellee was employed in the place as a cook, and was paid $15 per week for his services. On the same occasion the appellee made a similar statement, except as to the wages received. The statements then made were afterwards repudiated by both the prostitute and the appellee, and we think it is clearly demonstrated by testimony from unquestionable sources that the statements as to his employment in the house of prostitution were utterly false; that the appellee was not a cook; that he was not employed as such; and that there was no one in the house to cook for. The order of deportation must therefore be sustained, if at all, on the second ground.

At the final hearing before the immigration authorities, the prostitute testified that she had practiced prostitution near the Engel Mine, where the appellee was employed; that, after she left her place near the Engel Mine, the appellee gave her $400 to help purchase a house of prostitution in Marysville; that he expected to come and live with her there, and wanted her to practice prostitution; that the understanding when she bought the place was that she would marry him; that just prior to his arrest she understood that he was coming to Marysville to ascertain why she was not making money in the house he had purchased for her; that she then wrote him a letter requesting him to come to Marysville and asking him for $1,100, in order to disgust him and keep him away from her; that he never gave her the $1,100; that he only gave her small amounts of money from time to time, and then demanded it back; that she never paid him anything that she got out of the house; that, when he came to the house at Marysville, he registered, and she gave him a room; that he was not a cook there, but was the porter, receiving no compensation for his services; and that as to certain statements previously made by her, inconsistent with this testimony, she did not understand the questions and did not answer correctly. The appellee, on the other hand, testified that he loaned money to the prostitute on different occasions before his arrest; that the first loan was made when she was sick in a hospital; that he loaned her about $1,000 in all, before his arrest, and that just prior to his arrest he came to Marysville in response to a letter from her, and at her request made a further loan of $1,223 to pay the balance due on her automobile; that she promised to give him a receipt to evidence the loan; and that she failed to do so.

The other testimony in the case consisted of numerous affidavits of reputable citizens, tending to show that the appellee had been employed by the same company for eight or ten years immediately preceding his arrest, and has always borne a good reputation. The testimony as a whole leaves no room for doubt that this prostitute has fleeced the appellee of considerable sums of money and is now attempting to discharge her obligations by deporting him from the country. The only testimony tending to support the charge that the appellee assisted a prostitute, as that term is understood, was the unsupported statement of the prostitute herself. Ex parte Young (D. C.) 211 F. 370. If her testimony is entitled to any credence, of course the order of the court below should be reversed, but we are inclined to agree with the court below that it is not; and this is a matter of law. She admittedly testified falsely and wittingly to material facts on the hearing; she is ignorant and illiterate, as her letters disclose; there is a motive back of her testimony; she is as devoid of veracity as of virtue; and has not the slightest regard for the legal or moral sanction of an oath. For these reasons, we are unwilling to sanction the deportation from the country of a man who has been engaged in a gainful occupation for many years, and whose only fault has been his unfortunate association with this degraded woman.

The order of the court below is therefore affirmed.