**UNITED STATES ex rel. LOUROS v. LINDSEY, Inspector in Charge, Immigration Service.**

District Court, S. D. Texas, at Houston.
July 8, 1931.

A. J. De Lange, of Houston, Tex., for relator.

H. M. Holden, U. S. Atty., and M. S. McCorquodale, Asst. Dist. Atty., both of Houston, Tex., for respondent.

HUTCHESON, Judge.

This is a proceeding by habeas corpus in which the relator attacks the validity of a warrant ordering his deportation.

The order for deportation was based upon the finding that "the alien, who landed at the port of New York on the 27th day of March, 1914, has been found in the United States in violation of the Immigration Act of February 5, 1917, towit, in that he was found to be an immate of a house of prostitution, and that he has been found assisting a prostitute."

The record fails to support either of these grounds. It is quite evident that the proceedings in this case have been instituted, the evidence taken, and the finding reached under a misapprehension of the meaning and effect of the section of the statute invoked.

The subdivision of section 19 of the Immigration Act of 1917 (8 USCA § 155), under which this particular proceeding was brought, strikes in a comprehensive way at the evils of public prostitution, and seeks to make deportable those who engage in the furtherance of that business. It does not denounce acts of immorality as such, nor make deportable those who engage in them. It certainly does not make outlaws of nor proscribe from the pity and interest of mankind women of the street so as to justify the charge made here, that the furnishing by Louros of money to pay for the hospitalization and care of a sick woman was, because she had practiced prostitution, within the letter or the spirit of that statute which interdicts assisting a prostitute. The invoked section in full is as follows: "Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists any prostitute or protects or promises to protect from arrest any prostitute."

This section of course applies to and makes deportable any person who is in any way connected with the furtherance of prostitution by engaging in or promoting its gainful activities, whether this connection consists in directly maintaining women who practice it, or places where it is practiced or indirectly promoting it in ways adjunctive to or connected with its practice, such as music or dance halls, or kindred places of amusement or resort, which act as feeders to

it. It also applies to and makes deportable an alien who assists a prostitute to ply her vocation.

 Neither in themselves, nor as construed in the light of the age-old instincts and practices of the human race do the words of this clause extend to persons whose relations with prostitutes or places of prostitution are personal, and not at all motivated by or connected with the promotion of the trade or business as such. Nagle v. Eizaguirre (C. C. A.) 41 F.(2d) 735.

 The evidence in this case shows that this alien had lived in the United States before these proceedings were brought for more than fifteen years. In his behalf fifteen responsible and respectable citizens of Galveston testified to his being the owner and manager of the Royal Café, a first-class respectable restaurant, and that his reputation, outside of the one occasion when he had been convicted of violation of the Volstead Act (27 USCA) and of vagrancy because he had been found and arrested in a house of prostitution, was excellent. He himself denied ever having any relation whatever with the business of prostitution or ever having been an inmate of a house of that kind, and the only evidence which the government offered to the contrary was evidence that he had frequented such places, and had for some time lived with a woman who conducted such a business, and of one witness that when she became sick the woman had told him that Louros furnished her money for medical attention and cure.

The alien denied that he had furnished her money in her sickness. He testified, however, that he knew her well, that he had visited her many times, and that they had expected to be married.

Upon these facts, together with the statement of one witness, a policeman, whose testimony was vigorously denied, that he had visited a girl at the place where Louros visited the woman in question, that he had seen Louros beat her up, either because he was jealous of another man or because she did not make enough money, he did not know which, the government's finding rested.

I think it plain that the record contains no testimony which, fairly construed, remotely sustains the finding that the alien was either an inmate of a house of prostitution, or assisted a prostitute within the meaning of the statute.

Upon the whole record it is manifest that the alien has not been as choice in the selection of his associates as he should have been, and that he allowed his affections to center on one who has made her living in ways which, though rooted in custom old as earth, have never received the sanction of the law. It is also manifest, however, from the very facts upon which the government relies to sustain the charge, that it cannot be sustained, for, instead of his relations with the woman being professional and in the way of business, they were personal and in the way of affection for her. Instead of leaving her sick and desolate to her fate, according to the government's testimony, he furnished her the money for her maintenance and cure.

Stern and harsh though the face which the law turns to the woman of the streets has ever been, it has never been so cruel as to denounce as criminal or beyond its pale the giving her aid and comfort in sickness and in distress when, poor and miserable, dejected, and deserted, she stands pitiful and alone.

It appearing that the detention of the relator is unlawful, it is ordered that he stand discharged.